**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DRIVERDO LLC, a Kansas limited liability
company d/b/a DRAIVER,

                Plaintiff,

       v.

JP MORGAN CHASE BANK, N.A. d/b/a Chase
Bank, a national banking association,

               Defendant.

No. 20-CV-05046

Judge Joan Humphrey Lefkow

**AMENDED COMPLAINT FOR**
**DECLARATORY JUDGMENT AND OTHER RELIEF**

       Now comes Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a Draiver ("DriverDo"), by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its Amended Complaint for Declaratory Judgment and Other Relief against JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association ("Chase"), and states as follows:

**<u>The Parties</u>**

       1.      DriverDo is a startup technology services company providing remote transportation management services to the auto industry.

       2.      DriverDo is a Kansas limited liability company who is authorized to do business and does conduct business in Cook County, Illinois.

       3.      Mashhur Zarif Haque ("Haque") is the Founder and Chief Executive Officer of DriverDo and resides in Overland Park, Kansas.

       4.      Daniel Rizzo ("Rizzo") is the Chief Financial Officer of DriverDo and resides in Cook County, Illinois.

       5.      Defendant, Chase, is a national financial institution with multiple branches in Cook County, Illinois, with its headquarters located in New York City, New York.

**FACTS**
**Plaintiff opens business accounts at Chase**

6.      In June 2019, Rizzo, on behalf of DriverDo, met with a commercial banker, Bill Vardouniotis, at  the Chase main branch, 10 South Dearborn Street, Chicago, Illinois 60603, and opened two separate business banking accounts, "Account #2126" and "Account #2159" ("Account #2126" and "Account #2159" are collectively, the "DriverDo Chase Accounts").

7.      Haque and Rizzo are authorized signers and have full access to the DriverDo Chase Accounts.

8.      Subsequent to the opening of the DriverDo Chase Accounts, DriverDo was assigned a business relationship manager named Hiram Velez ("Hiram – Chase Relationship Manager"), located at the Chase branch in Wilmette, Illinois.

9.      Since June 2019, the DriverDo Chase Accounts have been used for the operation of DriverDo's business including, but not limited to, receipt of business revenues, payment of business expenses, payroll and other costs of the business.

10.      DriverDo's banking relationship with Chase was governed by the Deposit Account Agreement and Terms and Conditions (collectively, the "Account Agreement") as provided by Hiram – Chase Relationship Manager on July 20, 2020. Account Agreement attached hereto as Group Exhibit 1. DriverDo has never received any other account agreement or update either by mail or electronic transmission.

11.      The Account Agreement required Chase to provide DriverDo with a 30 day written notice of intent to terminate the DriverDo Chase Accounts. *See Account Agreement, Terms and Conditions, para. 14.*

12.      Further, the Account Agreement required Chase to make the funds available to DriverDo on the third business day after deposit, at the latest.  Any further delays required Chase to

notify DriverDo of the delay, the reason for the delay and when the deposited funds would be made available. *See Account Agreement, Terms and Conditions, Availability Policy.*

13.     The DriverDo Chase Accounts operated for over a year without any issue with Chase.

14.     However, on or about July 17, 2020, a series of events and inactions by Chase have caused and continue to cause serious and irreparable harm to DriverDo.

15.     On July 17, 2020, Rizzo attempted to obtain online access to the DriverDo Chase Accounts and withdraw funds on behalf of DriverDo.

16.     Unable to login to the DriverDo Chase Accounts, on July 17, 2020, Rizzo contacted the customer service line at Chase and was told that the DriverDo Chase Accounts were closed and that Chase had decided to terminate its banking relationship with DriverDo.

17.     After Rizzo advised Haque of the account closures, on the same day, July 17, 2020, Haque also contacted the customer service line at Chase to inquire as to the DriverDo Chase Accounts and was told the same thing, that the DriverDo Chase Accounts were closed and that the banking relationship had been terminated. In addition, Haque was told by a Chase representative that the DriverDo Chase Accounts were on a restricted status with only incoming funds to be credited while debits would be rejected.

18.     On July 18, 2020, Rizzo sent an email to Jamie Dimon, CEO of Chase and Chase's executive office email account detailing the events and actions taken by Chase in the previous few days and requesting to have the restriction lifted and release of funds in the DriverDo Chase Accounts if Chase was truly terminating the banking relationship. In the email, Rizzo also advised that DriverDo is a high transaction volume business and the critical importance of DriverDo being able to operate its accounts daily. In response to this email, a few days later, a Chase representative from Chase's executive office called Rizzo.

19.     On July 18, 2020, Rizzo also went to the Chase branch at 1849 W. North Avenue, Chicago, Illinois 60622, to further inquire as to the status of the DriverDo Chase Accounts.  Rizzo was

advised by a Chase representative that the DriverDo Chase Accounts were closed and restricted as of July 15, 2020 and that Haque was notified on July 15, 2020 of the account closures per the notes in Chase's system. Haque was never notified of the account closures until July 17, 2020.

20. Upon confirming the account closures in person, Rizzo immediately requested that Chase issue a certified check to DriverDo and release the funds in the DriverDo Chase Accounts. However, as a result of the restricted status of the DriverDo Chase Accounts, Chase's representative refused and advised Rizzo that DriverDo would no longer be able to withdraw any funds from the DriverDo Chase Accounts.

21. On July 18, 2020, Chase sent five (5) letters[1] to DriverDo regarding Account #2159 as follows:

a. Letter dated July 18, 2020, $236.00 transaction cancelled by Chase on July 17, 2020 in order to protect the account;
b. Letter dated July 18, 2020, $883.50 transaction cancelled by Chase on July 18, 2020, in order to protect the account;
c. Letter dated July 18, 2020, $10,000.00 transaction cancelled by Chase on July 17, 2020 in order to protect the account;
d. Letter dated July 18, 2020, $5,000.00 transaction cancelled by Chase on July 17, 2020 in order to protect the account;
e. Letter dated July 18, 2020, $400.00 transaction cancelled by Chase on July 30, 2020 in order to protect the account; and
f. Letter dated July 18, 2020, $21,000.00 transaction cancelled by Chase on July 17, 2020 in order to protect the account.

22. On July 18, 2020, Chase sent a letter via secure message in the online portal ("Closing Letter"), advising DriverDo that the DriverDo Chase Accounts would be closed but no date was provided as to when the DriverDo Chase Accounts would be closed. The Closing Letter further stated:

"We blocked the account ending in 2126, 2159 and will close it soon. We're doing this because of recent activity on the account, or because you didn't provide information we requested. **We may be able to keep your account open.** If you have the information we requested, please call 1-877-691-xxxx. **While the account is blocked, here's what to expect.**

---

[1] An ACH payment to DriverDo's insurance company was rejected on July 20, 2020 but no letter was ever provided. It is believed that there are other transactions that were cancelled without any letter or no notice from Chase.

- You cannot withdraw money, make purchases, or sign in to chase.com and Chase Mobile.
- You should deposit money at a branch if the account is overdrawn. Otherwise, we may take money from another Chase account on which you're a signer, including a joint account.
- Checks associated with the account will not be honored.
- We may reject direct deposits and automatic payments, so please notify any companies that send or receive these transactions.

If we close the account, we'll confirm your final deposits and payments…."

Closing Letter attached hereto as <u>Exhibit 2</u>.

23.     In response to the Closing Letter, on July 18, 2020, Haque contacted Chase through its customer service line and was told again that Chase had placed the DriverDo Chase Accounts on restricted status for up to 10 business days to allow for transactions to settle and that the DriverDo Chase Accounts will be closed and the funds in the DriverDo Chase Accounts would be overnighted. Again, Haque was assured by the Chase representative that all incoming funds via ach/wires would be received and accepted while debits would be rejected.

24.     The explanation given by Chase to Haque on July 18, 2020 for the restricted status and account closures was a withdrawal attempt initiated by a vendor in the amount of $96,335.00 (the Withdrawal Attempt") on Account#2159 on July 15, 2020. The Withdrawal Attempt had not been initiated by Haque or Rizzo.  Despite being able to verify the Withdrawal Attempt over the phone, Chase never attempted to do so with Haque.

25.     The Chase representative also advised Haque on July 18, 2020, that Chase had sent 9 alerts to Haque and Rizzo regarding the Withdrawal Attempt with no response and had commented to Haque that she wondered if there was an issue with the alert system. The Chase representative also advised Haque that there did not appear to be a profile or phone number change requested.

26.     Haque and Rizzo never received any alerts from Chase regarding the Withdrawal Attempt despite receiving alerts for approval of other ACH transactions.

5

27.     Later on July 18, 2020, Haque sent an email to Hiram – Chase Relationship Manager detailing the events and actions taken by Chase in the previous few days and requested that he look into the matter, that new accounts be opened if possible or if Chase was terminating the banking relationship, to release the funds in the DriverDo Chase Accounts immediately.

28.     Despite numerous requests to Chase from Haque and Rizzo, there was no specific information requested by Chase per the Closing Letter, no investigation into why access had been restricted and no communication regarding any necessary documentation that Haque and Rizzo could provide Chase that would unblock the DriverDo Chase Accounts.

29.     Chase has refused to provide the following information to DriverDo: (1) who requested the vendor payment of $96,335.00; (2) in what method was the vendor payment requested; (3) the destination of the vendor payment; and (4) why Chase decided to unilaterally terminate its banking relationship with DriverDo.

30.     Chase never advised Haque or Rizzo, in writing, as to when the restricted status of funds in the DriverDo Chase Accounts would be lifted and the funds made available.

31.     On July 27, 2020, as of 10:37 a.m., Haque received a text message from Hiram – Chase Relationship Manager that the DriverDo Chase Accounts were still restricted. Haque also contacted Chase's customer service line to request that the funds in the DriverDo Chase Accounts be released and when refused, inquired as to why the DriverDo Chase accounts were still on restricted status and when the restriction would be lifted.  Haque was simply told that Haque would have to wait 10 business days from either July 15, 2020 or July 17, 2020.

32.     On July 28, 2020, as of 1:47 p.m., Haque received a text message from Hiram – Chase Relationship Manager that the DriverDo Chase Accounts were still restricted.

33.     On July 31, 2020, as of 1:15 p.m., Haque received a text message from Hiram – Chase Relationship Manager that the DriverDo Chase Accounts were still restricted and the two accounts were closed. Haque also contacted the Chase customer service line and was told that Chase would be

sending a check for a portion of the funds in the DriverDo Chase Accounts in the amount of $104,420.78 ("Released Funds") and that the DriverDo Chase Accounts were showing as "Closed Pending". No explanation was given as to why the remaining funds in the DriverDo Chase Accounts could not be released or when they would be released.

34.     Between August 3, 2020 and August 5, 2020, Rizzo contacted Chase's executive office to inquire as to the status of the Released Funds and each time was told by a Chase representative who refused to give her last name but identified as Joanne, that Chase could not provide a timeline for when DriverDo would receive the Released Funds.  Finally, on August 6, 2020, Rizzo was told by the same representative at Chase's executive office that a check for the Released Funds was cut and sent but no information was given as to when the remaining funds in the DriverDo Chase Accounts would be released.

35.     On August 11, 2020, Rizzo and the Chase representative at Chase's Executive office had a conversation in which the representative advised Rizzo that the DriverDo Chase Accounts were still blocked and restricted but for the first time, the representative verified the account activity in the DriverDo Chase Accounts and advised that the remaining funds in the DriverDo Chase Accounts would be released by a certified check.

36.     Since July 18, 2020, Haque and Rizzo have made numerous requests to Chase, through the customer service line, Chase's executive office and through Hiram – Chase Relationship Manager, to release all the funds and lift the restriction placed on the DriverDo Chase Accounts.

37.     On repeated occasions, Haque or Rizzo were advised that Chase would release all the funds within 10 business days from the bank's restricted status which was on or about July 15, 2020.

38.     On August 15, 2020, DriverDo received another certified check in the amount of $96,335.00.

39.     Chase refused, without any investigation, communication, explanation or notice, either oral or written, to Haque or Rizzo as to why the DriverDo Chase Accounts were restricted and closed,

why Chase would not lift the restricted status and release the remaining funds in the DriverDo Chase Accounts as represented by Chase.

**Plaintiff obtains an EIDL from the Small Business Administration**

40. Due to the Covid-19 pandemic, on July 27, 2020, DriverDo had secured an Economic Injury Disaster Loan ("EIDL") through the Small Business Administration ("SBA") in the amount of $500,000.00 of which $499,900 was to be funded after a $100 loan fee (the "SBA Funds") to one of the DriverDo Chase Accounts.

41. On July 27, 2020, Haque and Rizzo received confirmation through the SBA's online portal that the SBA Funds had been disbursed into Account#2126, without any issue. SBA Screen Shots from online portal attached hereto as Group Exhibit 3.

42. On July 17, 2020 and July 18, 2020 Haque was assured by a Chase representative and Hiram – Chase Relationship Manager that all incoming funds, via ACH or wire, including the SBA Funds, would be accepted and made available for withdrawal once Chase upon release of all funds in the DriverDo Chase Accounts.

43. On July 30, 2020, Haque contacted the customer service line at Chase to inquire as to the status of the SBA Funds and was told that Chase had received the SBA Funds but that the funds would not be posted until the following day. Haque impressed upon the Chase representative that the SBA Funds were vital to the operations of DriverDo.

44. On July 30, 2020, Haque received confirmation from Hiram – Chase Relationship Manager, via text message, that Chase had received the SBA Funds but that the funds would not be posted until the following day.

45. On July 31, 2020, Haque again contacted the customer service line at Chase to inquire as to the status of the SBA Funds and was told that the SBA Funds were received, Chase could not reject the SBA Funds but could not say exactly when the SBA Funds would be made available. Haque

again impressed upon the Chase representative that the SBA Funds were vital to the operations of DriverDo.

46.     Between Haque and Rizzo, Chase was contacted almost every day thereafter through August 12, 2020 via the customer service line at Chase, Chase's Executive office and Hiram – Chase Relationship Manager, and on each occasion was given a different answer as to when the SBA Funds would be made available and at one point telling Haque that Chase had moved the SBA Funds to a different suspended account for review, that the SBA Funds were returned or that the SBA Funds would be made available but that they did not know when. On each occasion, Chase failed to provide further information as to the whereabouts of the SBA Funds and when these funds would be made available for withdrawal.

47.     On August 6, 2020, the SBA filed a UCC lien against DriverDo in connection with the EIDL, despite DriverDo not receiving the SBA Funds. Furthermore, it remains unclear what exactly Chase did with the SBA Funds. As a result of Chase's mishandling of the SBA Funds, and to the detriment of DriverDo, SBA required DriverDo to submit additional documentation for the EIDL.

48.     Between Haque and Rizzo, Chase was contacted almost every day from July 17, 2020 through August 12, 2020, via the customer service line at Chase, Chase's Executive Office and Hiram – Chase Relationship Manager, regarding the availability of the funds in the DriverDo Chase Accounts and on each occasion was told that the DriverDo Chase Accounts were on restricted status, that the accounts were closed but no further information was provided as to why they continued to be on restricted status and when the funds would be made available.

49.     On August 6, 2020, Haque requested a copy of the most recent bank statements from Hiram – Chase Relationship Manager for the DriverDo Chase Accounts.

50.     On August 10, 2020, Haque received the bank statements for the DriverDo Chase Accounts which set forth the account activity from July 1, 2020 through July 31, 2020.

51.     Both statements for the DriverDo Chase Accounts fail to reflect the SBA Funds and also fail to show the Released Funds.  DriverDo Chase Accounts Statements attached hereto as Group Exhibit 4.

52.     More specifically, the bank statement for Account#2159 shows an ending account balance as of July 31, 2020 in the amount of $159,314.88 and shows that the last deposit was made on July 20, 2020 and the last withdrawal was made on July 17, 2020.

53.     The bank statement for Account #2126 shows an ending account balance as of July 31, 2020 in the amount of $41,440.90 and shows the last deposit was made on July 22, 2020 and the last withdrawal was made on July 20, 2020.

54.     Chase has failed to provide any further documentation, other than the incomplete July bank statements, as to the transfer, deposit, or status of funds in the DriverDo Chase Accounts. To date, it is not clear if Chase is holding any other funds that may have been deposited since the accounts were put on restricted status.

55.     Chase's actions by unilaterally closing the DriverDo Chase Accounts, placing a restricted status on the DriverDo Chase Accounts without an investigation, communication, explanation or time frame for when the funds would be available and Chase's failure to make the SBA Funds available to DriverDo have caused insurmountable and irreparable economic harm to DriverDo's continued operation and business.

56.     The DriverDo Chase Accounts were closed and put on restricted status without proper notification and the funds in the DriverDo Chase Accounts and the SBA Funds were not made available in violation of customary bank standards and federal and state laws.

57.     As a direct result of Chase's conduct, DriverDo was unable to access funds to make payments for payroll or expense, DriverDo was not able to receive at least $300,000 in revenue that it would have otherwise received but for the restricted and closed status of the accounts and DriverDo never received its much needed EDIL funds from the SBA despite the SBA having filed its UCC

against DriverDo.  In addition, it is not clear what deposits or withdrawals were actually rejected by Chase.

58.     Chase's restriction of the DriverDo Chase Accounts forced the members of DriverDo to put up a combined $149,500 of their own funds as well as seek an alternative banking institution and take immediate steps to obtain an emergency high interest loan on July 23, 2020, in the amount of $140,000.00 in order to continue operations of DriverDo's business.

59.     As a direct result of Chase's conduct, DriverDo was not able to obtain any other emergency loan funds due to the SBA's UCC filing against DriverDo even through DriverDo did not receive the SBA Funds.

## COUNT I
## Declaratory Judgment

60.     Plaintiff repeats and re-alleges paragraphs 1 through 59 as if fully set forth herein.

61.     The Expedited Funds Availability Act ("EFAA") sets forth requirements that depository institutions make funds deposited into transaction accounts available according to a specified time schedule and that they disclose their funds availability policies to their customers. 12 U.S.C. §4001 et seq.

62.     The EFAA is regulated by the Federal Reserve Board and is codified under 12 C.F.R. Section 229, as amended.

63.     Specifically, 12 C.F.R. Section 229.12(b) requires a depository bank to make funds deposited in an account in the form of a local check available for withdrawal by the customer, not later than the second business day following the banking day on which funds are deposited.

64.     The regulation provides for six exceptions to the availability rule as follows: (i) for new accounts; (2) deposits in excess of $5,000 on any one day; (3) checks that have been returned unpaid and are being redeposited; (4) deposits to accounts that have been repeatedly overdrawn (5) cases in

which the bank has reasonable cause to believe the check being deposited is uncollectable; and (6) emergency conditions. 12 C.F.R. Section 229.13(a)-229.13(f).

65.     Whenever a bank invokes one of the exceptions to the availability requirements under 12 CFR Section 229.12(b), the bank is required to send a written notice to its customer invoking one of the exceptions. 12 CFR Section 229.13(g).

66.     An actual controversy exists between DriverDo on the one hand, and Chase, on the other hand, in that:

> a.     Chase failed to make the funds in the DriverDo Chase Accounts available for withdrawal as required under the EFAA;
>
> b.     Chase failed to provide any oral or written explanation as to when the funds in the DriverDo Chase Accounts would be made available for withdrawal in violation of the EFAA;
>
> c.     Chase failed to provide any oral or written explanation as to why the funds in the DriverDo Chase Accounts could not be made available for withdrawal in violation of the EFAA;
>
> d.     Chase failed to make the SBA Funds available for withdrawal as required under the EFAA;
>
> e.     Chase failed to provide any oral or written explanation as to when the SBA Funds would be made available for withdrawal in violation of the EFAA; and
>
> f.     Chase failed to provide any oral or written explanation as to why the SBA Funds could not be made available for withdrawal in violation of the EFAA.

67.     Despite the last deposits being made to the DriverDo Chase Accounts on July 20, 2020 and July 22, 2020, Chase failed to make the funds available pursuant to the EFAA.

68.     Clearly, the DriverDo Chase Accounts were not new accounts pursuant to 12 CFR Section 229.13(a).

69.     Chase has never sent a written notification to DriverDo as to why the funds in the DriverDo Chase Accounts and the SBA Funds could not be made available for withdrawal as required under 12 CFR Section 229.13(g).

70.     Nevertheless, although the deposits were in excess of $5,000, including the SBA Funds, the deposits made were by electronic means which made the large deposit exception inapplicable. 12 CFR 229.13(b).

71.     The current funds in the DriverDo Chase Accounts were also not redeposited or returned checks as all the deposits made were by electronic means and were sitting in the two accounts since at least July 17.  The SBA Funds were also made by ACH transaction such that 12 CFR 229.13(c) was not applicable.

72.     There was no overdraft concerns given that no notice of an overdraft was given by Chase nor was there ever an overdraft history.  Therefore the repeated overdrafts was not an exception that was applicable here. 12 CFR Section 229.13(d).

73.     No reasonable cause exception applies here as well pursuant to 12 CFR Section 229.13(e) as Chase would have been required to provide written notification to DriverDo as to any reasonable cause why the funds in the DriverDo Chase Accounts and the SBA Funds could not be made available for withdrawal.

74.     Finally, there was no emergency conditions that prohibited Chase from allowing DriverDo to withdraw its funds from the DriverDo Chase Accounts and withdrawal of the SBA Funds.

75.     The declaratory judgment and decree of this Court in equity is necessary and proper to ascertain and determine whether Chase is in violation of the EFAA and for this Court to order Chase to immediately allow DriverDo to withdraw the funds in the DriverDo Chase Accounts and the SBA Funds.

WHEREFORE, Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, respectfully request this Honorable Court to:

13

A.     Find that an actual and justiciable controversy exists;

B.     An accounting of all deposits and withdrawals that were attempted on the DriverDo Chase Accounts;

C.     Enter a judgment declaring that, under the circumstances described above, Defendant, JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, is in violation of the EFAA;

D.     Enter an award in favor of Plaintiff for their attorneys' fees and costs of suit; and

E.     Enter a judgment or an award in favor of Plaintiff and against Defendant, JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, for such other, further, or different relief as the Court may find equitable and just.

**COUNT II**
**Breach of Contract**

76.     Plaintiff repeats and re-allege paragraphs 1 through 75 as if fully set forth herein.

77.     Chase and DriverDo entered into a contractual agreement when the DriverDo Chase Accounts were opened in June 2019.

78.     The DriverDo Chase Accounts are governed by the Account Agreement.

79.     The Account Agreement states in relevant part:

**14. Termination.** Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) days' prior written notice of intent to close or terminate.

*See Exhibit 1 – Account Agreement, Terms and Conditions, para. 14.*

80.     The Availability Policy in the Account Agreement also required Chase to make deposits available either the same day in the case of cash, wire transfers and electronic direct deposits or the next day in the case of a U.S. Treasury check, checks drawn on an affiliate bank, state and local government checks, cashiers, certified and teller's checks and federal reserve bank checks, federal home loan bank checks and postal money orders. Any other check deposits could take up to three business days. *See Exhibit 1 – Account Agreement, Terms and Conditions, Availability Policy, section B, C and D.*

14

81.     In addition, the Availability Policy in the Account Agreement stated that longer delays may apply depending on the check deposited. However, if there was a longer delay, Chase would notify the customer in writing at the time the deposit is made and would specify when the funds will be available. *See Exhibit 1 -Account Agreement, Terms and Conditions, Availability Policy, section E.*

82.     Chase wrongfully closed and/or restricted Plaintiff's access to the DriverDo Chase Accounts without proper notice to DriverDo as set forth in the Account Agreement.

83.     Chase failed to make the funds deposited into the DriverDo Chase Accounts available pursuant to its Availability Policy.

84.     Chase failed to notify DriverDo in writing as to why the funds deposited into the DriverDo Chase Accounts would not be made available longer than required and when those funds would be made available as required under its Availability Policy.

85.     Chase failed to make the SBA Funds available pursuant to its Availability Policy.

86.     Chase failed to notify DriverDo in writing as to why the SBA Funds would not be made available longer than required and when the SBA Funds would be made available as required under its Availability Policy.

87.     By failing to make the funds in the DriverDo Chase Accounts available and failing to make the SBA Funds available, Chase failed to allow Plaintiff access to its own capital to use for business purposes that they would otherwise not have, and to which Chase has no legal right or interest.

88.     Upon being informed of DriverDo's request to have the restriction on the DriverDo Chase Accounts lifted or DriverDo's requests to have the funds turned over including the SBA Funds, Chase failed and refused, and continues to fail and refuse, to allow DriverDo to withdraw its funds from the DriverDo Chase Accounts.

89.     DriverDo has at all times performed all of its obligations under the Account Agreement.

15

90.     As a result of Chase's conduct, DriverDo has suffered actual damages and serious financial and pecuniary harm arising from monetary losses relating from Chase's failure to make the funds in the DriverDo Chase Accounts available and the SBA Funds available, out of pocket expenses including but not limited to costs related to obtaining an emergency high interest loan, members of DriverDo having to put up their own funds to cover the costs of operation, loss of revenue, costs to set up a new bank account, interruption of business and business development, legal fees and other related costs, all of which will continue to be incurred to DriverDo's great detriment and loss.

91.     As a result of Chase's conduct, DriverDo, via Haque, Rizzo and its other members and employees, have suffered great embarrassment, humiliation, emotional and mental pain and anguish and DriverDo will continue to suffer the same for an indefinite time, all to DriverDo's great detriment and loss.

92.     At all relevant times, the conduct of Defendant, as well as that of its agents and/or its employees, was malicious, intentional, willful, reckless and grossly negligent by failing to comply with the terms of the Account Agreement and federal and state laws.

WHEREFORE, Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, respectfully request this Honorable Court to:

A.      Enter judgment in favor of Plaintiff and against JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, for statutory damages, actual and consequential damages incurred plus reasonable attorney's fees and costs of suit; and

B.      Such other and further amounts as this Court deems appropriate.

## COUNT III
## Negligence and Gross Negligence

93.     Plaintiff repeats and re-allege paragraphs 1 through 92 as if fully set forth herein.

94.     Article 4 of the Uniform Commercial Code imposes upon Chase and its representatives, a duty of ordinary care and to act in good faith when handling deposits and collections for its customers. 810 ILCS 5/4-103

95. In addition, Chase, through its representatives have a duty to communicate accurate information to DriverDo, a duty to handle the release of the funds in the DriverDo Chase Accounts and the SBA Funds with reasonable care, to exercise ordinary care in making the funds in the DriverDo Chase Accounts and the SBA Funds available and to notify DriverDo in writing if the funds could not be made available, why they could not be made available and when they would be made available.

96. Chase on multiple occasions represented to DriverDo that all the funds in the DriverDo Chase Account would be released and that the SBA Funds would be accepted and made available upon release of all funds in the DriverDo Chase Accounts.

97. However, Chase failed to timely release the funds in the DriverDo Accounts, failed to release the SBA Funds, failed to investigate, communicate and request any documents to verify the activity in the DriverDo Chase Accounts in order to lift the restrictions placed and failed to provide any proper notifications to DriverDo as to when the funds in the DriverDo Chase Accounts and the SBA Funds would be available.

98. By failing to investigate, communicate and request any documents to verify the activity in the DriverDo Chase Accounts, Chase had no basis to place any restrictions on the DriverDo Chase Accounts or keep the restrictions in place on the DriverDo Chase Accounts and therefore failed to use ordinary care in handling the SBA Funds and release of all the funds in the DriverDo Chase Accounts.

99. By failing to make the funds in the DriverDo Chase Accounts and the SBA Funds available despite representations made otherwise, Chase was malicious, intentional, willful, reckless and grossly negligent in its failure to perform its duties in accordance with normal and customary bank standards, the Account Agreement and federal and state law requirements.

100. Chase not only breached its duty of care but it acted in bad faith and in reckless disregard to the rights of DriverDo to the funds in the DriverDo Chase Accounts and the SBA Funds.

101.    Chase's breach of its duties placed DriverDo's business operations at a foreseeable risk due to Chase's failure to make the funds in the DriverDo Chase Accounts and the SBA Funds available as required by law.

102.    As a result of Chase's conduct, DriverDo has suffered actual damages and serious financial and pecuniary harm arising from monetary losses relating from Chase's failure to make the funds in the DriverDo Chase Accounts available and the SBA Funds available, out of pocket expenses including but not limited to costs related to obtaining an emergency high interest loan, members of DriverDo having to put up their own funds to cover the costs of operation, loss of revenue, costs to set up a new bank account, interruption of business and business development, legal fees and other related costs, all of which will continue to be incurred to DriverDo's great detriment and loss.

103.    As a result of Chase's conduct, DriverDo, via Haque and Rizzo have suffered great embarrassment, humiliation, emotional and mental pain and anguish and DriverDo will continue to suffer the same for an indefinite time, all to DriverDo's great detriment and loss.

104.    Chase's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious damages and harm to DriverDo as set forth herein and, as a result, Chase is liable to compensate DriverDo for the full amount of its actual damages, as well as other relief this Court deems just.

WHEREFORE, Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, respectfully request this Honorable Court to:

A.    Enter judgment in favor of Plaintiff and against JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, for statutory damages, actual and consequential damages incurred plus reasonable attorney's fees and costs of suit; and

B.    Such other and further amounts as this Court deems appropriate.

**COUNT IV**
**Negligent Misrepresentation**

105.    Plaintiff repeats and re-allege paragraphs 1 through 104 as if fully set forth herein.

18

106. Chase, through its representatives, made several false representations to DriverDo in the course of Chase's business.

107. As stated above, Chase's representatives at the customer service line and at Chase's Executive office and Hiram – Chase Relationship Manager, on multiple occasions, represented to DriverDo that the funds in the DriverDo Chase Accounts would be made available within 10 business days and that the SBA Funds would be accepted and made available upon release of all funds in the DriverDo Chase Accounts.

108. Despite representations made by Chase, Chase did not release all the funds held in the DriverDo Chase Accounts and did not accept the SBA Funds and make those funds available to DriverDo.

109. The representations made by Chase, through its representatives, was meant to, and did in fact guide DriverDo's actions as DriverDo expected that all the funds in the DriverDo Chase Accounts would be released within the 10 business days and that the SBA Funds would be made available upon release of all funds in the DriverDo Chase Accounts.

110. As a result of Chase's misrepresentations, DriverDo was unable to access funds to make payments for payroll or expenses, DriverDo was not able to receive at least $300,000 in revenue that it would have otherwise received, DriverDo had to seek another emergency loan to be able to operate DriverDo's business and lost out on the much needed EDIL funds from the SBA despite the SBA having filed its UCC against DriverDo.

111. On August 6, 2020, the SBA filed a UCC lien against DriverDo in connection with the EIDL, despite DriverDo not receiving the SBA Funds. Furthermore, it remains unclear what exactly Chase did with the SBA Funds. As a result of Chase's mishandling of the SBA Funds, and to the detriment of DriverDo, SBA required DriverDo to submit additional documentation for the EIDL.

112.    The representations made by Chase, through its representatives, were false statements of material fact.

113.    Chase, through its representatives had a duty to communicate accurate information to DriverDo and had a duty to handle the release of the funds in the DriverDo Chase Accounts and the SBA Funds with reasonable care.

114.    Chase knew the importance of the DriverDo Chase Accounts and the SBA Funds and that DriverDo needed those funds in order to operate its business.

115.    DriverDo reasonably and justifiably relied on the representations made by the Chase representatives to DriverDo's detriment.

116.    The representations made by Chase, through its representatives, was a direct and proximate cause, as well as a substantial factor, in bringing about the serious damages and harm to DriverDo as set forth herein and, as a result, Chase is liable to compensate DriverDo for the full amount of its actual damages, as well as other relief this Court deems just.

WHEREFORE, Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, respectfully request this Honorable Court to:

A.  Enter judgment in favor of Plaintiff and against JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, for statutory damages, actual and consequential damages incurred plus reasonable attorney's fees and costs of suit; and

B.  Such other and further amounts as this Court deems appropriate

**COUNT V**
**Conversion**

117.    Plaintiff repeats and re-allege paragraphs 1 through 116 as if fully set forth herein

118.    Chase has no legal right, claim, or interest in funds held in the DriverDo Chase Accounts.

119.    Chase unlawfully restricted DriverDo from accessing its funds in the DriverDo Chase Accounts.

120.    Haque and Rizzo on behalf of DriverDo have made numerous demands to Chase to release the funds in the DriverDo Chase Accounts, but Chase failed and refused to unblock the DriverDo Chase Accounts and release the funds in the DriverDo Chase Accounts and the SBA Funds to Haque and Rizzo as required by customary bank standards, the Account Agreement, federal and state law requirements.

121.    The monies held in the DriverDo Chase Accounts and the SBA Funds were wrongfully converted by Chase in derogation of DriverDo's right to a return of the funds in the DriverDo Chase Accounts.

WHEREFORE, Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, respectfully request this Honorable Court to:

A.    Enter judgment in favor of Plaintiff and against JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, for statutory damages, actual and consequential damages incurred plus reasonable attorney's fees and costs of suit; and

B.    Such other and further amounts as this Court deems appropriate

DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, Plaintiff

By:   /s/ Sandra A. Aguilera_____

Sandra A. Aguilera #6286182
Vanessa E. Seiler #6270105
**ARONBERG GOLDGEHN DAVIS & GARMISA**
*Attorneys for Plaintiff*
330 N. Wabash Avenue, Suite 1700
Chicago, Illinois 60611
Phone: (312) 755-3165
saguilera@agdglaw.com
vseiler@agdglaw.com)

# Account Terms | JPMORGAN CHASE BANK, N.A.

V1.0_0106

## INTRODUCTION

This document (the "Account Terms"), contains the general terms and conditions and other disclosures for the accounts and services which the Customer may select, and constitutes an agreement between the Bank and the Customer. References to the "Customer" in the Account Terms mean the governmental, nonprofit, or business entity to which the Bank provides accounts and services. All accounts subject to the Account Terms are, regardless of their location, referred to in this document as "Accounts". The Account Terms may be supplemented or amended by existing or future agreements, terms and conditions, and notices, including, but not limited to any terms contained in an account application, signature card or similar document for an Account or arrangements regarding specific types of Accounts or services ("Services") offered by the Bank, as described herein or which by their terms ("Service Terms") are subject to the Account Terms. By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments, agreements, terms and conditions, notices or Service Terms, as applicable.

The Accounts established with the Bank are subject to the Account Terms and relevant Account documentation ("Account Documentation"). The Customer shall not transfer any of its rights and obligations in an Account or with respect to a Service, or create any form of security interest over such rights and obligations or in an Account, without the prior written consent of the Bank.

### 1. Authorized Persons.

1.1 The Bank is authorized to rely upon any document that indicates the person authorized to act on behalf of the Customer ("Authorized Person") with respect to the Accounts and Services, until the authority for the Authorized Person is withdrawn by the Customer upon written notice to the Bank, and the Bank has a reasonable opportunity to act on the termination instruction. The Customer will provide specimen signatures to the Bank, in the manner requested by the Bank.

1.2 Each Authorized Person, subject to any written limitation received and accepted by the Bank, is authorized on behalf of the Customer to: open, operate and close Accounts; overdraw Accounts as permitted by the Bank; appoint and remove Authorized Persons; execute or otherwise agree to any form of agreement relating to the Accounts or Services, including, without limitation, Account Documentation; execute guarantees, indemnities or other undertakings to the Bank in relation to guarantees, letters of credit or other financial transactions, or in relation to missing documents; draw, accept, endorse or discount checks, drafts, bills of exchange, notes and other financial instruments ("Items"); receive materials related to security procedures; and give instructions ("Instructions"), including, without limitation, requests and payment orders, by means other than the signing of an Item, with respect to any Account transaction. Without limitation, such Instructions may be given singly or otherwise regarding: (i) the payment, transfer or withdrawal of funds by wire, computer or other electronic means, or otherwise; (ii) money, credits, items or property at any time held by the Bank for account of the Customer; or (iii) any other transaction of the Customer with the Bank.

1.3 If the Customer provides the Bank with facsimile signature specimens, or if the Customer issues Items with a facsimile signature on one or more occasions, the Bank is authorized to pay Items signed by facsimile signature (including, but not limited to, computer generated signatures) if the actual or purported facsimile signature, regardless of how or by whom affixed, resembles the specimens filed with the Bank by the Customer, or resembles a specimen facsimile signature otherwise employed for the Customer's benefit.

1.4 The Customer represents that, prior to submitting any document which designates the persons authorized to act on the Customer's behalf, the Customer shall obtain from each individual referred to in such document all necessary consents to enable the Bank to process the data set out therein for the purposes of providing the Service.

### 2. Instructions; Security Procedures.

2.1 The Bank and the Customer may from time to time agree upon a security procedure to be followed by the Customer upon the issuance of an Instruction and/or by the Bank upon the receipt of an Instruction, so as to enable the Bank to verify that such Instruction is effective as that of the Customer. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, call back procedures or similar security devices. It is understood that such security procedure is designed to verify the authenticity of, and not to detect errors in, Instructions. The Customer agrees to safeguard such security procedure and to make it available only to authorized persons. Any Instruction, the authenticity of which has been verified through such security procedure, shall be effective as that of the Customer. An authenticated SWIFT message issued to the Bank in the name of the Customer shall be deemed to have been given by an Authorized Person.

2.2 The Bank is not obligated to confirm any Instructions. If the Customer, other than with respect to security procedures, chooses to confirm an Instruction, any confirmation must be clearly marked as such, and, if there is any discrepancy between an Instruction and a confirmation, the terms of the Instruction shall prevail. Subject to Section 5.5, the Bank may, at its option, use any means to confirm or clarify any request or Instruction, even if any agreed security procedure appears to have been followed. If the Bank is not satisfied with any confirmation or clarification, it may decline to honor the Instruction.

### 3. Deposits.

3.1 All Items deposited or cashed are received for collection only, and are received subject to final payment. The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and deadlines to the extent permitted by applicable law or practice. The Bank chooses the method of collecting Items and may use other banks in the process. The Bank will present Items in accordance with the custom and practice of the jurisdiction in which the Items are collected. The Bank is not responsible for actions taken by other banks, nor for the loss or destruction of any Item in the possession of other banks or in transit. The Customer agrees to use reasonable efforts to assist the Bank in locating or obtaining replacements of Items lost while in the Bank's possession.

3.2 Credits and deposits to an Account will be available in accordance with the Bank's availability policy and in accordance with applicable laws. If the Bank credits an Account: (i) in contemplation of receiving funds for the Customer's credit and those funds are not actually received by the Bank, or (ii) in reliance on a transaction which is subsequently set aside or revoked, or if the Bank does not receive funds for the Customer's

GROUP EXHIBIT 1

credit for value on the date advised by or on behalf of the Customer, then the Bank shall be entitled to debit any Account of the Customer with the amount previously credited and/or with any other charges incurred, even if doing so creates or increases an overdraft.

3.3     If the Customer sends an Item to the Bank on a collection basis, the Bank may defer credit or payment for a reasonable time, in accordance with its practices, without dishonor; and the Bank shall not be obligated thereon until it has remitted final payment.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

3.4     The Bank may provide or make available upon request a receipt or similar document for certain deposits to your Account.  However, the amount on such receipt or similar document is based solely on the deposit ticket.  Credits for all deposits whether or not accompanied by a deposit ticket, including bulk deposits, are subject to final verificationThe Bank reserves the right to make adjustments to the Account for any errors, including any errors appearing on the deposit ticket, occurring during processing or otherwise, but the Bank has no obligation to do so for de minimis discrepancies.

3.5     The Bank may accept Items drawn on a non-U.S. bank or Items payable in a foreign currency on a collection basis, not for deposit, even if the Bank has taken possession of the Items as part of a deposit.  Therefore, the Customer may not receive provisional credit for such Items, or if provisional credit has been given the Bank may revoke it.  The actual credit for Items payable in a foreign currency will be at the Bank's exchange rate, for the Account credited, in effect at the time of final collection in U.S. dollars.

3.6     The Customer must place its endorsement on the back of a check only in the area within 1.5 inches from the trailing edge of the check.  The trailing edge of the check is defined as the left side of the check looking at it from the front.  If the Customer is authorized in writing to endorse checks on the Bank's behalf, the Customer agrees to comply with the endorsement standards of the Bank and of Appendix D of Regulation CC of the Federal Reserve System (available through your Bank representative).

3.7     If the Customer pre-encodes Items, the Customer should not use carrier documents (Items placed inside envelopes) in either high-speed forward or return cash letters.  If the Customer does send carrier documents in either high-speed forward or return cash letters, the Customer shall be solely responsible for any losses or claims related to it, including, without limitation, errors in the amount of the Item, delays in processing or claims based upon poor image quality, and shall indemnify and hold the Bank harmless from and against any and all claims resulting directly or indirectly from processing the carrier documents.

3.8     If the payor bank, drawer or payee on any Item returns the Item to the Bank or makes a claim against the Bank based on an asserted unauthorized signature or endorsement or an asserted alteration, the Bank may accept that return or pay that claim and charge the Customer's Account for all or any part of the amount of the Item, even if the claim is made after the payor bank's return deadline.  If the Customer deposits or cashes an Item drawn on the Bank and the Item or any endorsement is asserted to be forged, unauthorized or altered, the Bank may charge back all or any part of the amount of the Item, even if the charge back is made after the Bank's midnight deadline.

3.9     The Customer agrees that the Bank may collect any deposited Item by electronic means.  The Customer will not deposit any substitute checks (that are not returned items) unless the Bank specifically agrees to accept such deposit.  In the event the Bank processes any substitute checks for deposit, without a specific agreement, the Customer agrees that the processing of it shall not be deemed to be the Bank's agreement to accept any substitute checks for deposit and that the Customer will be solely responsible for any loss or liability in connection with the deposit.

3.10    If the Customer uses any of the Bank's night depositories, the Customer does so solely at its own risk.  The Bank is not liable for any deposit in the night depository until the Bank issues the Customer a deposit ticket or other receipt acknowledging the deposit.  Any Bank employee may open and count the money deposited in any night depository, and that employee's determination of the amount of money will be conclusive.  The Customer is solely responsible for any loss incurred from the disappearance, theft, or loss of any envelope, bag, or money before the Bank verifies the contents of the deposit.

4.      Payment of Items.

4.1     The Bank is authorized to pay any Item drawn on the Account, in accordance with the Bank's usual procedures.  The Bank is authorized to debit the Account on which the Item is drawn on the day the Item is presented, certified or accepted, or at such earlier time that the Bank receives notice by electronic or other means that an Item drawn on an Account has been deposited for collection at another financial institution.  The Bank may determine Account balances in order to decide whether to dishonor an Item for insufficient funds at any time between receiving such presentment or notice and the time of the return of the Item, and need make no more than one such determination.

4.2     The Bank is authorized to pay all Items presented to it or cashed at the Bank, regardless of amount and without inquiry as to the circumstances of issue, negotiation or endorsement or as to the disposition of proceeds, even if drawn, endorsed or payable to cash, bearer or the order of the signer or any Authorized Person or to a lender in payment of that individual's obligations.

4.3     The Customer shall immediately notify the Bank if it becomes aware that any Items (whether completed or blank) are lost or stolen. The Customer shall not issue Items that are post-dated, and the Bank shall not be liable for any damages caused by premature payment or certification of a post-dated Item. Further, The Customer shall not put any condition, restriction or legend on any Item, and the Bank is not required to comply with any such condition, restriction or legend.

4.4     The Bank may process any Item by electronic means.  All Items the Customer draws against any Account must comply with the Bank's check specifications and image standards, published from time to time, and industry standards.  The Bank shall not be liable for damages or losses due to any delay or failure in procuring, collecting or paying Items not conforming to such specifications or standards, except to the extent such losses or damages are the result of the Bank's gross negligence or willful misconduct.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

4.5     The Bank may, in its discretion, cash Items drawn on its Account when presented by the holder. If a payee who is not the Bank's deposit account customer presents an Item drawn on the Account for cash, the Bank may refuse to cash the Item or may charge the payee a fee for cashing the Item.

4.6     If the Customer establishes an Account which purports to: (i) require two or more signatures on any

Items drawn on the Account; or (ii) limits the maximum amount for which any person can sign an Item, the Customer acknowledges and agrees that any such requirement is solely for the Customer's own internal control purposes. The Customer agrees that as long as the Bank follows its usual and customary procedures for processing and paying Items, the Bank will not be liable for paying any Item (a) lacking the required number of signatures, or (b) in an amount exceeding the maximum limit assigned to the signer.

4.7     If the Bank offers the Customer services reasonably designed to help prevent check fraud and the Customer fails to utilize those services, that failure will constitute Customer negligence contributing to the making of an unauthorized signature and the Customer will assume the risk that checks or drafts presented against its Account may be forged or altered, to the extent that the services the Bank offered may have prevented any loss. In the event the Bank receives or is presented with Items which appear to be duplicates of each other, then the Bank may return one or more of such Items.

4.8     The Customer assumes all responsibility and liability for any claim or loss that the Customer or the Bank may suffer as a result of the Customer's: (i) issuance of a check in such a manner that information, marks or bands on the back of the check obscures endorsements; or (ii) placement of an endorsement on the back of the check which obscures other endorsements; and which thereby causes a delay in the forward processing and/or return processing of the check. The Bank retains the right to refuse to accept a check for deposit when the back of the check is unreasonably obscured.

4.9     If an Item issued by the Customer is transferred or negotiated outside of the United States and is subsequently sent to the Bank for deposit, collection or payment in the United States, the Customer shall be deemed to make, to the Bank, the transfer and presentment warranties under the Uniform Commercial Code, as if such Item were negotiated or otherwise transferred in the United States.

4.10    A stop payment Instruction from the Customer will be effective on an Item if: (i) the Bank receives the stop payment Instruction with a reasonable opportunity to act on such Instruction, which shall be at least one (1) full Business Day following the Business Day of the Bank's confirmed receipt of the Instructions at the applicable Bank location; (ii) the Instruction contains all information concerning the Item that the Bank requires, and is in the

form required by the Bank; and (iii) the Item is not yet paid or cashed. For purposes of this Section, "Business Day" means a day on which the Bank is generally open for business in the jurisdiction where the Account is maintained. Stop payment Instructions on Items, unless otherwise provided, will be valid for one (1) year and will automatically renew up to six (6) additional years unless the Bank confirms receipt of the Customer's revocation of a stop payment Instruction. The Customer may request, through the Bank's call center or other authorized representative, a non-renewable stop payment, which will be effective for a 180-day period. The Bank shall not be liable for any Item properly paid or cashed prior to the effective date of a stop payment request. Stop payment Instructions on Items are effective in having the Item returned unpaid by the Bank. However, stop payment Instructions have no effect on the rights of a holder in due course of the Item to make a claim directly against the Customer.

## 5.     Funds Transfer Instructions.

5.1     The Customer may issue funds transfer Instructions against Accounts, subject to the Bank's acceptance. Funds transfer Instructions will be received, processed and transmitted only on the Bank's funds transfer business days, and within the Bank's established cut-off hours on such days. The Customer may reverse, amend, cancel or revoke any Instructions only with the consent of the Bank, and the beneficiary's bank. The Bank will debit the Account for the amount of each funds transfer Instruction accepted by the Bank, and may debit the Account for all fees associated with any funds transfer Instruction. No restrictions upon the acceptance of funds transfer Instructions by the Bank or upon the Accounts that the Bank may debit shall be binding unless agreed to by the Bank in writing. The Bank shall not be required to inquire into the circumstances of any transaction.

5.2     Notwithstanding any instructions by the Customer to the contrary, the Bank reserves the right to use any funds transfer system in the execution of any funds transfer Instruction and may otherwise use any means of executing the funds transfer Instruction which the Bank deems reasonable in the circumstances.

5.3     In connection with any funds transfer, the Bank and other financial institutions may rely upon the identifying number of the beneficiary, the beneficiary's bank or any intermediary bank included in the funds transfer. Also, the beneficiary's bank in the funds transfer Instruction may make payment on the basis of the identifying number even though it identifies a person

different from the named beneficiary. Accordingly, the Customer shall be responsible for the consequences of any inconsistency between the name and identifying number, as instructed, of any party in such a funds transfer Instruction.

5.4     In accepting a funds transfer Instruction issued in the Customer's name for payment in currency other than the currency of the Account, the Bank is authorized to debit the Account for the equivalent amount of the foreign currency transferred at the Bank's prevailing rate of exchange or as otherwise agreed. In processing the funds transfer, other banks may deduct fees from the payment order issued to them. If the Bank accepts funds transfer Instructions issued in a foreign currency where the Customer is the beneficiary, the Bank may convert the funds to the currency of the Account at the Bank's applicable currency exchange rate and charge the Customer a fee for such currency conversion.

5.5     Unless the Customer and the Bank have agreed in writing to an alternate security procedure, the authenticity of oral or written (including those transmitted by facsimile) funds transfer Instructions may, at the Bank's discretion, be verified by telephonic call-back confirmation with an Authorized Person. The Customer agrees that this security procedure is commercially reasonable for such Instructions. The Customer further agrees to be bound by such funds transfer Instructions, whether or not authorized, if issued in the name of the Customer using such security procedure.

The following provision in this section applies to Accounts in the United States, and to Services provided in connection with such Accounts.

5.6     All ACH entries received for an Account will be received by the Bank subject to the rules of the National Automated Clearing House Association and any other applicable ACH rules. The Customer agrees to be bound by such ACH rules. Any credit given by the Bank to the Customer for an ACH entry shall be provisional until the Bank receives final settlement. If the Bank does not receive final settlement, the Bank may revoke the provisional credit and charge back the amount to the Account or obtain a refund from the Customer, in which case the originator of the credit entry shall not be deemed to have paid the Customer the amount of such entry. The Bank shall not be obligated to notify the Customer of the receipt of a payment order or ACH entry for credit or debit to an Account.

## 6.     Interest; Fees; Taxes.

6.1     The Bank, unless otherwise agreed, will pay interest on certain Accounts in accordance with the Bank's usual procedures.  The Bank may adjust interest paid (or principal if required by law) on time deposit Accounts or fixed term Accounts from which withdrawals are made prior to maturity.

6.2     The Customer will pay all fees and charges applicable, from time to time, to the Account and each Service.   Unless otherwise agreed, the Bank is authorized to debit the Account for fees, charges, and levies or taxes imposed by any revenue or governmental authority,whether or not such fees, charges, levies or taxes will result in an overdraft of the Account, or to bill the Customer separately.  All payments to the Bank shall be in full, without set-off or counterclaim and free of any deduction or withholdings on account of any tax or otherwise.

6.3     The Customer will pay or reimburse the Bank for any taxes, levies, imposts, deductions, charges, stamp, transaction and other duties and withholdings (together with any related interest, penalties, fines, and expenses) in connection with the Account or Services (including payments or receipts to an Account) except if imposed on the overall net income of the Bank.  The Customer will provide the Bank such documentation, declarations, certifications and information as the Bank may require in connection with taxation, warrants that such information is true and correct in every respect and shall immediately notify the Bank immediately if any information requires updating or correction.

## 7.     Account Statements.

7.1     The Bank will issue Account statements, confirmations, or advices ("Account Statements") at the frequency and in the manner advised to the Customer from time to time.  The Customer will ensure that an Authorized Person examines the Account Statements it receives from the Bank from time to time within a reasonable time of receipt.  The Bank shall not be responsible for the Customer's reliance on balance, transaction or related information that is subsequently updated or corrected or for the accuracy or timeliness of information supplied by any third party to the Bank. Internet Account Statements or electronic Account Statements, if applicable, shall be deemed by the Customer and the Bank to be available to the Customer when the Account Statements are posted on the Internet and the Bank sends an electronic mail notification of availability to the Customer, or when the Bank sends the

electronic Account Statement to the Customer.   For purposes of determining when an Item is sent to the Customer, an image of an Item or information identifying the Item (i.e. Item number, amount and date of payment) is a sufficient substitute for the actual Item.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

7.2     The Customer must notify the Bank in writing of any unauthorized, improper, or missing endorsements within six (6) months after the Account Statement is mailed, transmitted or made available to the Customer. The Customer must notify the Bank in writing of any other errors, discrepancies or irregularities in any Account Statement, or in the Items and documents summarized or detailed in the Account Statement, or of the non-receipt of an expected Account Statement, within sixty (60) calendar days after the Account Statement is mailed, transmitted or made available to the Customer. The Customer must provide the Bank with all information necessary for the Bank to investigate the alleged error, discrepancy or irregularity, and must provide all supporting affidavits and testimony that the Bank requests.

7.3     If the Bank is safekeeping or truncating checks or deposit slips, the Customer agrees that cancelled checks or deposit slips will not be returned in the Account Statement and that the original cancelled checks or deposit slips may be destroyed in accordance with the Bank's applicable record retention schedules.

## 8.     Overdrafts.

8.1     The Bank may debit the Account even though the debit may bring about or increase an overdraft. Unless otherwise agreed, any overdraft shall be immediately due and payable by the Customer to the Bank.  If the Bank permits an overdraft, the Bank is authorized to charge interest on the amount of the overdraft as long as the overdraft is outstanding, at the rate determined by the Bank, up to the maximum rate permitted by law at the time of the overdraft or at the specific rate negotiated between the Customer and the Bank.  Whether or not the Bank pays an Item that brings about or increases an overdraft, the Bank may deduct the applicable overdraft fees and expenses from the Account without notice.  Unless agreed in writing, the Bank is under no obligation to permit any overdraft or to continue to permit overdrafts after having permitted an overdraft, notwithstanding any prior action or course of dealing.

8.2     When Items and other debits to the Account are presented to the Bank for payment on the same day and there are insufficient available funds in the Account to pay all of these transactions, the Bank may choose the order in which it pays transactions, including, without limitation, the largest transaction first or any other order determined by the Bank, in its sole discretion.

## 9.     Set Off.

The Bank may at any time, without prejudice to any other rights which it may have, and without prior notice or demand for payment, combine, consolidate or merge all or any of the Accounts of the Customer or may retain, apply or set off any money held in any Account in any currency towards payment of any amount owing by the Customer to the Bank or any of its affiliates.  The Bank shall be entitled to accelerate the maturity of any time deposit or fixed term deposit.  For the purposes of this Section the Bank may effect currency conversions at such times or rates as it may think reasonable and may effect such transfers between any Accounts as it considers necessary.  The Customer grants to the Bank a lien and security interest in any Accounts of the Customer at the Bank, in order to secure any and all obligations and liabilities of the Customer to the Bank.

## 10.     Agents; Information.

The Customer authorizes the Bank to retain an agent to perform data processing, collection and other services that the Bank considers necessary or desirable and may modify or terminate the Bank's arrangements with the Bank's agents at any time.  The Customer agrees that requests, Instructions, and information with respect to Accounts, the Customer itself, or transactions to be disclosed in accordance with the Account Terms, may be transmitted across national boundaries and through networks, including networks owned and operated by third parties.  The Customer authorizes the Bank to disclose information with respect to any Account, the Customer itself, or any transaction in which: (i) the disclosure, in the Bank's opinion, is necessary or desirable for the purpose of allowing the Bank to perform its duties and to exercise its powers and rights hereunder; (ii) the disclosure is to a proposed assignee of the rights of the Bank; (iii) the disclosure is to a branch, affiliate, subsidiary, employee or agent of the Bank or to its auditors, regulators or legal advisers; (iv) the disclosure is to the auditors of the Customer; or (v) the disclosure is permitted or required by law, regardless of whether the disclosure is made in the country in which

the Customer resides, in which the Account is maintained, or in which the transaction is conducted.

## 11. Liability Limitation; Force Majeure.

11.1    The Bank, its agents, employees, officers and directors, shall not be liable for any damage, loss, expense or liability of any nature which the Customer may suffer or incur, except to the extent of direct losses or expenses attributable to the gross negligence or willful misconduct of the Bank, its agents, employees, officers or directors.  The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise; provided, however, that the foregoing shall not apply to the extent such loss or damage is caused by fraud on the part of the Bank, its agents, employees, officers or directors.

11.2    Neither the Bank nor the Customer shall be liable for any loss or damage to the other for its failure to perform or delay in the performance of its obligation resulting from an act of God, act of governmental authority, de jure or de facto, legal constraint, war, terrorism, catastrophe, fire, flood or electrical, computer, mechanical or telecommunications failure, or failure of any agent or correspondent, or unavailability of a payment system, or any cause beyond its reasonable control.

## 12. Indemnity.

The Customer agrees to indemnify and hold the Bank, and its agents, employees, officers and directors, harmless from and against any and all claims, damages, demands, judgments, liabilities, losses, costs and expenses (including attorneys' fees) resulting directly or indirectly from: (i) the Bank's acceptance or execution of any request or direction, including, without limitation, Items and Instructions issued in the name of an Authorized Person; or (ii) the Bank's payment of any taxes, interest or penalty otherwise due from the Customer paid on the Customer's behalf, or for which the Bank has no responsibility under the Account Terms.

## 13. Notices.

All Account Statements and notices may be sent to the Customer by ordinary mail, courier, facsimile transmission, electronic transmission, through internet sites, or by such other means as the Customer and the Bank agree upon from time to time, at the address of the Customer on the books and records of the Bank.  Unless otherwise arranged, all notices to the Bank must be sent to the Bank to the officer or service representative managing the Account, and must be sent by ordinary mail, by courier, by facsimile transmission, by electronic transmission or by such other means as the Customer and the Bank agree upon from time to time.  The Bank shall have a reasonable time to act on any notices received.

## 14. Termination.

Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of:  (i) a material breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial condition of the other party has become materially impaired; or (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation, or as a result of a court or regulatory agency order or proceeding. Notwithstanding anything to the contrary in any Service Terms, upon the closing of an Account, all Services linked to such Account are simultaneously terminated (unless otherwise specifically agreed to by the parties) and the Bank's obligations in respect of such Account or Services will terminate.  However, any such closing or termination shall not affect the Customer's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect.  In the absence of instructions from the Customer, the Bank may transfer balances to an unclaimed moneys account, or issue a cashier's check, sending it to the address of the Customer on the books and records of the Bank.

## 15. Account Disclosures.

15.1    The Bank may return or refuse to accept all or any part of a deposit or credit to an Account, at any time, and will not be liable to the Customer for doing so, even if such action causes outstanding Items to be dishonored and returned, or payment orders to be rejected.  Refused deposits will be returned to the Customer.

15.2    The Bank may refuse to allow a withdrawal from any Account in certain cases including, but not limited to, cases where: (i) there is a dispute about the Account (unless a court or other competent authority has ordered the Bank to allow the withdrawal); (ii) a legal garnishment or attachment is served, including, but not limited to, a levy, restraining notice or court order; (iii) the Account is being used as collateral to secure a debt; (iv) Account Documentation has not been presented; or (v) the Customer fails to pay a Bank loan or  other debt or obligation to the Bank on time.

15.3    Any amount standing to the credit of any Account with the Bank is payable exclusively at the branch at which the Account is held; however, payment may be suspended from time to time in order to comply with any law, regulation, governmental decree or similar order, in any jurisdiction, for the time being affecting the Bank, its officers, employees, affiliates, agents or correspondents.   The Customer acknowledges that deposits held in a branch of the Bank located outside the United States:  (i) are not insured by the Federal Deposit Insurance Corporation; (ii) are subject to cross-border risks; and (iii) may enjoy a lesser preference as compared to deposits held in the United States in the event the Bank should be liquidated, insolvent or placed into receivership or other proceeding for the benefit of creditors.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

15.4    The Customer is permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from a savings account (including a money market deposit account) per calendar month or statement cycle or similar period.  If the savings account can be accessed by Items, then no more than three (3) of these six (6) transfers may be made by an Item.  The Bank is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a savings account.  The Bank does not presently exercise this right.

15.5    The Customer, if eligible, may open an interest bearing checking account ("NOW Account"). The Bank is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a NOW Account. The Bank does not presently exercise this right.

15.6    The Bank is authorized, for regulatory reporting and internal accounting purposes, to divide an Account: (i) in the case of a demand deposit checking Account, into a non-interest bearing demand deposit sub-account and a non-interest bearing savings sub-account; (ii) in the case of a NOW Account, into an interest bearing NOW sub-account and an interest bearing savings sub-account, and, in both cases, to transfer funds between these sub-accounts in accordance with U.S. law at no cost to the Customer. The Bank will record the sub-accounts and any transfers between them on the Bank's books and records only. The sub-accounts and any transfers between them will not affect the Account number, balance requirement or use of the Account.

15.7    The Bank, for its administrative purposes may designate a branch of the Bank as the branch of record of an Account which may be different from the branch at which the Account is opened. This designation requires no action on the part of the Customer and will not change the Bank's operations, Services or customer support.

## 16.    Governing Law.

16.1    The Account Terms, the relevant Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located. With respect to Accounts maintained in the United States, the Account Terms, the Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account also shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of law rules). Unless otherwise specified in the Service Terms, the rights and obligations of the Customer and the Bank under any Service Terms shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of law rules). For purposes of clarity, unless otherwise specified in the Service Terms or Account Terms, for Accounts maintained in the United States and for all Services, such governing law shall include U.S. federal laws and regulations, Federal Reserve Bank rules and Operating Circulars, clearing house rules, automated clearing house rules and general

commercial bank practices applicable to the type of Account and Services provided to the Customer.

16.2    The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby. Any claim in connection with Accounts which are the subject of these Account Terms, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the incurrence of the cause of action, except as prohibited by applicable law.

16.3    In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account. This section is for the benefit of the Bank only and does not prevent the Bank from taking proceedings in the courts of any other country or state with jurisdiction including, to the extent allowed by law, concurrently in any number of countries or states.

## 17.    Miscellaneous.

17.1    If the Account Terms, Account Documentation, including, without limitation, Service Terms, are translated into, or appear in a language other than English, the English language version shall control.

17.2    The expression "the Bank", when used herein, shall mean JPMorgan Chase Bank, N.A., and any of its affiliates or subsidiaries, as applicable, and shall include any successors of the Bank including, without limitation, an assignee or successors of JPMorgan Chase Bank, N.A. or any affiliate or subsidiary of such bank or any person who, under the laws of the jurisdiction of incorporation or domicile, has assumed the rights and obligations of the Bank, affiliate or subsidiary hereunder or to which under such laws the same have been transferred.

17.3    The Account Terms or Service Terms may vary applicable law or regulation to the maximum extent permitted under any such law or regulation. Any provision of applicable law or regulation that cannot be varied shall supersede any conflicting term of the Account Terms or Service Terms. Any terms of any supplement, amendment, agreement, Service Terms or notice that are inconsistent with a provision of the Account Terms shall supersede the Account Terms'

provision for purposes of the particular account or Service which is the subject thereof. The Account Terms supersede and replace any other account conditions previously sent to the Customer.

17.4    Section headings are for convenience only and shall not affect the meaning of the Account Terms. If any provision of the Account Terms shall be held to be illegal or unenforceable, the validity of the remaining portions of the Account Terms shall not be affected.

17.5    The Customer represents and warrants that it shall comply with all applicable laws and regulations. The Bank will not be obligated to execute payment orders or effect any other transaction hereunder where the beneficiary or other payee is a person or entity with whom the Bank is prohibited to do business by law or regulation or in any case where compliance would, in the Bank's judgment, conflict with applicable law or banking practice.

17.6    The Bank, with respect to Account operations and processes, may change these Account Terms or impose other restrictions on the Customer's Accounts or the Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels. Changes to the Account Terms which are required by law may be implemented immediately or as required by law. The Bank may waive any of these Account Terms, but such waiver shall apply only on that occasion. Such waiver shall not constitute a waiver of any other provision of the Account Terms.

17.7    To the extent that the Customer has or hereafter may acquire any immunity (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or legal process (whether from service of notice, injunction, attachment, execution or enforcement of any judgment or otherwise), the Customer irrevocably waives and agrees not to claim such immunity.

17.8    The Customer agrees at its sole expense: (i) to advise each of its employees, officers, agents or other persons accessing any Service by or on behalf of Customer ("Users") of their obligations under the Account Terms or under any Service Terms or ancillary Service material, including, but not limited to, the obligation to refrain from using the Service via the Internet in the countries identified by the Bank; and (ii) to provide the Bank with all information reasonably necessary to setup and provide Services for the Customer, including, but not limited to, advising the Bank of the countries from which Users will access any Service via the Internet. Customer

shall promptly provide the Bank with a notice of any claims it receives regarding a Service.

17.9     The Bank or the Customer, at its sole discretion, may make recordings and retain such recordings of telephone conversations between the Customer and the Bank.

17.10    All payment Instructions, whether Items, payment orders or otherwise, are subject to applicable law and payment system rules.

17.11    The Bank may retain copies (paper, electronic or otherwise) of any documents or Items relating to the Accounts and Services in a form preserving an image of any such documents or Items, including signatures, or a regular business record and discard the original documents or Items.  The Customer hereby waives any objection to the use of such records in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction, including, without limitation, objections arising from the Bank's role or acquiescence in the destruction of the originals.

17.12    All intellectual property rights in or relating to a Service, including any trademarks, service marks, logos, and trade names used in conjunction with a Service are the property of the Bank or its licensors and are protected by applicable copyright, patent, trademark and other intellectual property law. Except as provided herein, the Customer shall not reproduce, transmit, sell, display, distribute, establish any hyperlink to, provide access to, modify, or commercially exploit in whole or in part any part of a Service, without the prior written consent of the Bank.

17.13    To assist in the fight against the funding of terrorism and money laundering activities, applicable law or regulations may require financial institutions to obtain, verify, and record information that identifies each person who opens an account.   What this means for the Customer:  When the Customer opens an account, the Bank may ask for the Customer's name, address, date of birth (for individuals), and/or other information and documents that will allow the Bank to identify the Customer.   The Customer agrees that the Bank also may request and obtain certain information from third parties regarding the Customer.   For purposes of this provision, the Customer, to the extent required by law or regulation, shall include any signatory on an Account.  If the Customer fails to provide or consent to the provision of any such information, the Bank may close any Account or discontinue providing any service without further notice.

## 18.     Disputes over Account Funds.

The Bank may refuse to pay out any money from an Account until any dispute over the deposits or funds (including, without limitation, any dispute over what persons are authorized to represent or act for the Customer) has been resolved by a court, or by agreement of the parties that is documented to the Bank's satisfaction.   The Bank may file an action in interpleader with respect to any money where the Bank has been notified of disputed claims to that money. If any person asserts that a dispute exists, the Bank is not required to determine whether that dispute has merit in order to refuse to pay funds or interplead the funds.   The Customer agrees to reimburse the Bank for any expenses, including legal and attorneys' fees, that the Bank incurs because of any dispute.

## 19.     Provisional Recredit.

In connection with any dispute regarding an Account, the Bank may choose to credit the Account pending completion of the Bank's investigation of the dispute. If the Bank determines that the Customer is not entitled to such credit, then, the Bank may reverse the provisional recredit to the Account, even if that reversal results in an overdraft.

The following Section applies to Accounts in the United States, and to Services provided in connection with such Accounts.

## 20.     Abandoned or Inactive Accounts.

In the event the Bank is required to remit funds to any state as abandoned property, the Account may be charged for fees in remitting funds to any state. These charges are not refundable.  If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least six months, the Bank is not required to provide an Account statement until the Account has additional activity. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least 12 months, the Customer may be unable to access the Account until appropriate contact is made between the Customer and the Bank.

# Availability Policy

## FOR ACCOUNTS MAINTAINED IN THE U.S.

The Bank's policy is to make funds available to the Customer on the same, next, second or third business day after the day of deposit depending on the type of deposit as described below. If the Customer will need the funds from a deposit immediately, the Customer should ask the Bank when the funds will be available.

**A. Determining the Day of a Deposit**. If a deposit is made to an account at a banking center located in the same state as the banking center address on the face of the check at which that account was opened and/or is maintained, before 2:00 p.m. at a banking center or 12:00 noon local time at an ATM*, on a business day that the Bank is open, then the Bank will consider that day to be the day of deposit. However, if a deposit is made after that time, on a Saturday, Sunday or federal holiday, or in a state different from the state of the banking center at which the relevant account was opened and/or is maintained, then the Bank will consider that the deposit was made no later than the next business day. For determining the availability of deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. Availability with respect to any deposit will be determined by the location of the banking center or other facility where the deposit was received.

**B. Same Day Availability**. Funds from the following deposits will be available on the business day the Bank determines the deposit is made:
- Cash;
- Wire transfers; and
- Electronic direct deposits to an account.

**C. Next Day Availability**. Funds from the following deposits are available on the first business day after the business day the Bank determines the deposit is made:
- U.S. Treasury checks that are payable to the Customer;
- Checks drawn on a Bank affiliate that holds the applicable account (excluding a Controlled Disbursement site); and
- At least, the first $100 from a day's total deposits.

- If the deposit is made in person to a Bank employee, funds from the following deposits are also available on the first business day after the business day the Bank determines the deposit is made:
  - State and local government checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center is used;
  - Cashier's, certified, and teller's checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center, is used; and
  - Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders, if these items are payable to the Customer.

If a special deposit slip is not used, availability of funds from these deposits will follow the schedule identified in the Availability of Other Check Deposits section below.

**D. Availability of Other Check Deposits**. Funds from all other deposits of checks drawn on banks (as defined in Federal Reserve Regulation CC) will be available depending on whether the check is a local or nonlocal check. Checks can be identified as local or nonlocal by looking at the first four digits of the nine-digit bank routing number normally located on the lower left-hand side of the check. Some checks are marked "payable through" and have a four- or nine-digit number near the routing number. For these checks, use the four-digit number (or the first four digits of the nine-digit number), not the routing number on the bottom of the check, to determine if these checks are local or nonlocal.

Checks that require special handling may receive delayed availability.

The amount of funds available to the Customer will be reduced by the amount of any deposited check that is returned unpaid. If the Bank reprocesses the check, the funds will become available no later than the second business day after the banking day the check is reprocessed, for local items, or no later than three business days after the banking day the check is reprocessed, for all other items.

**E. Longer Delays May Apply.** In some cases the Bank may not make all of the funds that are deposited by check available. Depending on the type of check deposited, funds may not be available until the fifth business day after the day of deposit. However, the first $100 of the aggregate deposit will be available on the first business day after the day of deposit.

If the Bank is not going to make all of the funds from a deposit available at the times shown above, it will notify the Customer at the time the deposit is made. The Bank will also specify when the funds will be available. If a deposit is not made directly to a Bank employee, or if the Bank decides to take this action after the Customer has left the premises, the Bank will mail or deliver the notice to the Customer by the day after the Bank receives the deposit. The Bank will notify the Customer if it delays the ability to withdraw funds for any of these reasons, and it will tell the Customer when the funds will be available.

Funds deposited by check may be delayed for a longer period under the following circumstances:
- The Bank believes a deposited check will not be paid;
- Deposited checks for all of the Customer's accounts total more than $5,000 in any one day;
- The Customer redeposited a check that has been returned unpaid;
- The Customer has overdrawn one or more of its accounts repeatedly in the last six months; or
- There is an emergency, such as failure of communications or computer equipment.

In such circumstances, funds will generally be available no later than the seventh business day after the day of deposit. Inclement weather or transportation delays may lead to additional delays under certain availability schedules. Please see your specific availability schedule.

The Federal Reserve banking system does not allow forward processing of any check over $99,999,999. The Bank will handle any such item as a collection item, with customer credit and availability deferred accordingly.

This Availability Policy and availability schedules may be changed without notice.

---

*    Certain banking centers and automated teller machines (ATM) observe cut-off hours later than 2:00 p.m. and 12:00 noon local time, respectively. Check the local banking center or ATM for exact times.

© 2006  JPMorgan Chase & Co.  All rights reserved.
JPMorgan Chase Bank, N.A.  Member FDIC.

## Additional Banking Services and Fees for Business Accounts
## Deposit Account Agreement

This document is part of the Deposit Account Agreement and has 5 sections that provide additional information about our products and services.
1. Product Information
2. Business Deposit Express
3. Fee Schedule
4. Card Purchase and Withdrawal Limits
5. Chase Business Overdraft Services

---

### Deposit Account Agreement – Business Product Information

| BUSINESS CHECKING ACCOUNTS | |
|---|---|
| | *Chase Total Business Checking®* |
| *No Monthly Service/ Maintenance Fee in any statement period in which you* | • Maintain a minimum balance at the beginning of each day of $1,500 or more in this account **OR**<br>• Maintain a linked Chase Sapphire℠ Checking or Chase Private Client Checking℠ account<br><br>Chase Military Banking benefits are available on Chase Total Business Checking accounts for current or prior members of our nation's military, and require a valid military ID to waive the Monthly Service Fee on the account<br><br>These additional benefits require direct deposit of military base pay (does not include allotments). These benefits will begin the day after military base pay is direct deposited into a Chase Total Business Checking account and will end if no direct deposit has been made within the last 180 days:<br>• No Chase fee on all non-Chase ATM transactions (ATM owner/network fees still apply)<br>• No Chase fee on incoming or outgoing wire transfers<br>• No Chase fee for Exchange Rate Adjustments on debit card purchases or ATM withdrawals using your Debit/ATM card in currencies other than U.S. dollars |
| *Otherwise, a Monthly Service/Maintenance Fee will apply* | **$12** with Paperless Statements on chase.com<br>**$15** with paper statements<br>**$16** for accounts converting to Chase Total Business Checking and receiving paper statements with copies of checks |
| *Transaction⁴ Fees per month* | Electronic deposits and deposited items made via ATM, ACH and Chase QuickDeposit℠: No Charge⁵<br>Deposits and deposited items made with a teller, incoming wires and all debits: 0–100 No Charge / 101+ $0.40/each |
| *Interest* | None |
| *No Cash Deposit Processing Fee* | For the first $5,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) |
| *Other* | **Certain cash management services, including, but not limited to, Cash Concentration, Lockbox and End of the Day Sweeps are not permitted in conjunction with this type of checking account. Chase reserves the right to convert the account to accommodate such cash management services. Conversion may result in increased fees** |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

**Deposit Account Agreement – Business Product Information**

| **BUSINESS CHECKING ACCOUNTS** (CONTINUED) | | |
|---|---|---|
| | *Chase Performance Business Checking* ® | *Chase Performance Business Checking with Interest* ® |
| *No Monthly Service/ Maintenance Fee in any statement period in which you* | Maintain an average beginning day balance[6] of $35,000 or more in any combination of linked business savings (excluding Client Funds Savings accounts), business CDs and other Chase Performance Business Checking accounts | Not Applicable |
| *Otherwise, a Monthly Service/Maintenance Fee will apply* | **$30** | |
| *Transaction[4] Fees per month* | Electronic deposits and deposited items made via ATM, ACH, Wire and Chase QuickDeposit: <br> Deposits and deposited items made with a teller, incoming wires and all debits: | No Charge[5] <br> 0–250 No Charge <br> 251+ $0.40/each |
| *Interest* | None | Variable; based on daily collected balance |
| *No Cash Deposit Processing Fee* | For the first $20,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) | |
| *Wire Transfers* | **Wire Transfers: Incoming[12]** <br> Domestic     No Charge <br> International     No Charge | **Wire Transfers: Outgoing** <br> 2 most expensive outgoing domestic wire transfers per month included at no charge; otherwise, the following charges will apply: <br> Domestic (chase.com)    $25 per transfer <br> Domestic (branch)    $35 per transfer <br> International U.S. Dollar (chase.com)    $40 per transfer <br> International FX (chase.com)    $5 per transfer or $0 per transfer if the amount is equal to $5,000 USD or more <br> International U.S. Dollar or FX (branch)    $50 per transfer |
| *Other* | • Certain cash management services are not permitted, or may be limited, in conjunction with this type of checking account. Chase reserves the right to convert the account to accommodate such cash management services. Conversion may result in increased fees <br> • $4 Check Enclosure Fee charged per statement for accounts converting to Chase Performance Business Checking and Chase Performance Business Checking with Interest and receiving paper statements with copies of checks <br> • No charge for Check Protection Services (Positive Pay) or Check Monitoring (Reverse Positive Pay) via chase.com <br> • No non-Chase ATM fees charged by Chase for using another institution's ATM[7] <br> • No charge for Counter Checks, Money Orders, Cashier's Checks <br> • Link up to 99 Chase Performance Business Checking subaccounts <br> • No Monthly Service Fee on a linked Chase Total Checking® account | |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Deposit Account Agreement – Business Product Information

| **BUSINESS CHECKING ACCOUNTS** (CONTINUED) | | |
|---|---|---|
| | *Chase Platinum Business Checking*[SM] | |
| *No Monthly Service/ Maintenance Fee in any statement period in which you* | Maintain an average beginning day balance of $100,000 ($50,000 when linked to Chase Private Client Checking) or more in any combination of linked business savings (excluding Client Funds Savings accounts), business CDs, other Chase Platinum Business Checking accounts and qualifying investment accounts[8] | |
| *Otherwise, a Monthly Service/Maintenance Fee will apply* | **$95** | |
| *Transaction[4] Fees per month* | Electronic deposits and deposited items made via ATM, ACH, Wire and Chase QuickDeposit[SM]: No Charge[5] <br> Deposits and deposited items made with a teller, and all debits: <br> 0–500    No Charge <br> 501+    $0.40/each | |
| *Interest* | None | |
| *No Cash Deposit Processing Fee* | For the first $25,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) | |
| *Wire Fees* | **Wire Transfers: Incoming[12]** <br> Domestic                      No Charge <br> International                 No Charge | **Wire Transfers: Outgoing** <br> 4 most expensive outgoing wires per month included at no charge; beyond 4, the following charges will apply: <br> Domestic (chase.com)                      $25 per transfer <br> Domestic (branch)                          $35 per transfer <br> International U.S. Dollar (chase.com)   $40 per transfer <br> International FX (chase.com)              $5 per transfer or $0 per transfer if the amount is equal to $5,000 USD or more <br><br> International U.S. Dollar or FX (branch)  $50 per transfer <br> No charge when linked to Chase Private Client Checking |
| *Other* | • Certain cash management services are not permitted, or may be limited, in conjunction with this type of checking account. Chase reserves the right to convert the account to accommodate such cash management services. Conversion may result in increased fees <br> • 1 Insufficient Funds Fee waived per statement period <br> • 1 Returned Item Fee waived per statement period <br> • No charge for Deposited Item Returned or Cashed Check Returned <br> • No charge for Stop Payments made via Chase Online[SM], branch and Chase by Phone® automated phone system, or renewals of Stop Payments <br> • No non-Chase ATM fees charged by Chase for using another institution's ATM[7] <br> • No charge for Counter Checks, Money Orders, Cashier's Checks | • Link up to 99 Chase Platinum Business Checking subaccounts <br> • No Monthly Service Fee on a linked Chase Premier Plus Checking[SM] account <br> • No monthly charge for QuickDeposit Single Feed <br> • **No charge for Check Protection Services (Positive Pay) or Check Monitoring (Reverse Positive Pay) via chase.com** |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Deposit Account Agreement – Business Product Information

| BUSINESS CHECKING ACCOUNTS (CONTINUED) | Chase Analysis Business Checking℠ | | Chase Analysis Business Checking with Interest℠ | |
|---|---|---|---|---|
| Monthly Service/ Maintenance Fee | **$25** | | | |
| Transaction⁴ Fees per month | Checks Paid/Debits $0.24/each<br>Branch Credit $2.00/each<br>Electronic Credit $0.25/each | | On-Us Deposited Items $0.20/each<br>Not-on-Us Deposited Items $0.27/each | |
| Wire Fees | **Wire Transfers: Incoming**¹² <br> Domestic $ 15.00/item<br>International $ 15.00/item | | **Wire Transfers: Outgoing** <br> Domestic (chase.com) $10 per transfer<br>Domestic (branch) $35 per transfer<br>International U.S. Dollar (chase.com) $40 per transfer<br>International FX (chase.com) $5 per transfer or $0 per transfer if the amount is equal to $5,000 USD or more<br>International U.S. Dollar or FX (branch) $50 per transfer | |
| Other | Chase QuickDeposit Deposited Item $0.20/item<br>Chase QuickDeposit Credit $0.80/day<br>ACH Return Fee: $3/item | | Returned Deposited Item $10/item<br>Returned Item Redeposit $3/item | |
| Interest | None | | Variable; based on daily collected balance | |
| Earnings Credit | Variable; subject to change at Chase's discretion. It is applied to the monthly average collected balance and used to offset fees for monthly maintenance, transactions, cash management and additional banking services | | Not Applicable | |
| Negative Collected Balance Fee | Chase Prime +3% charged on daily negative collected balance | | | |
| Balance-Based Charges | Varies; subject to change at Chase's discretion | | | |
| No Cash Deposit Processing Fee | For the first $10,000 per month (see Business Deposit Express Fee Schedule for additional fees) | | | |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

**Deposit Account Agreement – Business Product Information**

## BUSINESS CHECKING ACCOUNTS (CONTINUED)

| | IOLTA/IOTA/IOLA/IBRETA/IOREBTA/IRETA/COLTAF/CARHOF/UARHOF℠ | Client Funds Checking℠ |
|---|---|---|
| No Monthly Service/ Maintenance Fee in any statement period in which you have | Not Applicable | Not Applicable |
| Otherwise, a Monthly Service/ Maintenance Fee will apply | Accounts located in IL, NY: **$15** <br> Accounts located in all other states where offered: **$0** | None |
| Transaction[4] Fees per month | None | None |
| Interest | Variable; based on daily collected balance | None |
| Earnings Credit | Not Applicable | Not Applicable |
| No Cash Deposit Processing Fee | Not Applicable | Not Applicable |
| Other | Monthly Service Fee is deducted from interest earned and remaining interest is paid to the applicable state association or foundation to fund public service. Fees for additional banking services may be billed to your Chase Analysis Business Checking, Chase Platinum Business Checking or Chase Performance Business Checking (interest counterparts included, where applicable). Refer to your Pro Forma Analysis provided by your banker | Link up to 99 subaccounts <br><br> Special purpose use only |

| | Chase Business Complete Checking℠ — UT Only |
|---|---|
| No Monthly Service/ Maintenance Fee in any statement period in which you | • Maintain a linked Chase Sapphire℠ Checking or Chase Private Client Checking℠ account **OR** <br> • Fulfill at least one of the following qualifying activities: <br>   • Maintain a minimum balance of $2,000 or more in this account each day of the statement period[1] <br>   • Spend $2,000 using your linked Chase Ink® Business Card[2] on purchases (minus returns or refunds) in your most recently completed monthly card billing period <br>   • Deposit $2,000 into your Chase Business Complete Checking account from your eligible QuickAccept℠ or WePay account(s) at least one day prior to the last day[3] of your bank account statement period |
| Chase Military Banking Benefits | Chase Military Banking benefits are available on Chase Business Complete Checking Accounts for current service members and veterans of our nation's military <br><br> Monthly Service Fee Waiver: This fee can be waived with a valid military ID or proof of military service <br><br> Additional benefits for Active Duty service members require direct deposit of military pay (does not include allotments). Benefits will end if no direct deposit has been made within the last 180 days: <br> • No Chase fee on all non-Chase ATM transactions (ATM owner fees still apply) <br> • No Chase fee on incoming or outgoing wire transfers <br> • No Chase fee for Exchange Rate Adjustments on debit card purchases or ATM withdrawals using your Debit/ATM card in currencies other than U.S. Dollars |
| Otherwise, a Monthly Service/ Maintenance Fee will apply | **$15** |
| Transaction[4] Fees per month | No charge for digital transactions (e.g. ATM, ACH deposits, and Chase QuickDeposit℠) <br><br> No charge on the first 20 transactions for paper checks written on the account, and deposits or withdrawals made with a teller. After the first 20 transactions, a $0.40 per transaction fee applies to paper checks written on the account, and deposits or withdrawals made with a teller |
| Interest | None |
| No Cash Deposit Processing Fee | For the first $5,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) |
| Other | **Certain cash management services, including, but not limited to, Cash Concentration, Lockbox and End of the Day Sweeps are not permitted in conjunction with this type of checking account. Chase reserves the right to convert the account to accommodate such cash management services. Conversion may result in increased fees** |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Deposit Account Agreement – Business Product Information

### QuickAccept (Payment Acceptance Function)

QuickAccept allows customers with a Chase Business Complete Checking account to accept card payments directly into their Chase Business Complete Checking account. Most domestic and international credit, debit, prepaid or gift cards with a Visa, Mastercard, American Express or Discover logo can be accepted through QuickAccept.

| BUSINESS CHECKING ACCOUNTS (CONTINUED) | |
|---|---|
| | *QuickAccept℠ Pricing — UT Only* |
| *Key Entry Transactions* | **3.5% + $0.10** per authorized, key-entered transaction for card payments accepted when card information is inputted through the QuickAccept section of the Chase Mobile® app |
| *Card Reader Transactions* | **2.6% + $0.10** per authorized transaction via:<br>• Swiping a magnetic strip-enabled card through the reader<br>• Dipping an EMV-enabled card in the reader<br>• Tapping an NFC-enabled contactless card to the reader<br><br>When available, the card reader will be sold separately and ordered via the QuickAccept feature of the Chase Mobile app. Purchase and use of the card reader are subject to separate terms and conditions |
| *Other* | • If you refund a payment in full, transaction fees will be returned in full<br>• If you refund a payment in part, transaction fees will not be returned<br>• You agree to reimburse us for all fines, fees, penalties, liabilities, or other charges or assessments by a card network or other payment network relating to your actions or your transactions |

**NOTE: The cost of processing a payment via another Chase Merchant Services solution may be higher or lower depending upon the size and method of the payment.**

## Deposit Account Agreement – Business Product Information

| BUSINESS SAVINGS ACCOUNTS | | | |
|---|---|---|---|
| | Chase Business Total Savings℠ | Chase Business Premier Savings℠ | Client Funds Savings℠ |
| No Monthly Service/ Maintenance Fee in any statement period in which you have | • An average ledger balance of $1,000 or more in this account; OR <br> • A linked Chase Total Business Checking account | • An average ledger balance of $25,000 or more in this account; OR <br> • A linked Chase Performance Business Checking, Chase Analysis Business Checking or Chase Platinum Business Checking account (interest counterparts included, where applicable) | Not Applicable |
| Otherwise, a Monthly Service/ Maintenance Fee will apply | $10 | $20 | $0 |
| Transaction[4] Fees per month | 0–15 deposited items – No Charge <br> 16+ $0.40/each | 0–30 deposited items – No Charge <br> 31+ $0.40/each | None |
| Withdrawal Penalties | $5 Savings Withdrawal Limit Fee, which is a Chase fee, applies for each withdrawal or transfer out of this account over six per monthly statement period. All withdrawals and transfers out of your business savings account count toward this fee, including those made at a branch or at an ATM[9] | $5 Savings Withdrawal Limit Fee, which is a Chase fee, applies for each withdrawal or transfer out of this account over six per monthly statement period. All withdrawals and transfers out of your business savings account count toward this fee, including those made at a branch or at an ATM[9] <br><br> Waived with: A balance of $25,000 or more in this account at the time of withdrawal or transfer out | Not Applicable |
| | Federal law also limits the number of withdrawals you may make from this account[9] | | |
| Interest | Variable; based on daily collected balance | Variable; based on daily collected balance. Premier relationship rates available when linked to an active[10] Chase Performance Business Checking, Chase Analysis Business Checking or Chase Platinum Business Checking account (interest counterparts included, where applicable) | Variable; based on daily collected balance <br><br> Interest is paid to the client's account |
| No Cash Deposit Processing Fee | For the first $5,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) | For the first $10,000 per statement period (see Business Deposit Express Fee Schedule for additional fees) | Not Applicable |
| Other | Not Applicable | Not Applicable | Available only with Client Funds Checking |

NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.

**Deposit Account Agreement – Business Product Information**

| BUSINESS CD ACCOUNTS | |
|---|---|
| | *Chase Certificates of Deposit℠* |
| *Minimum Deposit to Open* | $1,000 |
| *Interest* | Fixed; based on ledger balance |
| *Statement Period* | Summary of linked CDs appears on monthly checking account statement |
| *Withdrawal Penalties* | **There is a penalty for withdrawing principal prior to the maturity date.**<br>–If the term of the CD is less than 12 months, the early withdrawal penalty is equal to $25 plus 1% of the amount withdrawn<br>–For terms of 12 months or more, the early withdrawal penalty is equal to $25 plus 3% of the amount withdrawn<br>–If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as we described above, but it cannot be less than seven days' interest<br>–The amount of your penalty will be deducted from principal |
| *Other* | CD relationship rates available when linked to a Chase Total Business Checking, Chase Performance Business Checking, Chase Analysis Business Checking or Chase Platinum Business Checking account (interest counterparts included, where applicable) |

| BUSINESS DEBIT AND ATM CARDS FOR OWNERS AND SIGNERS | | |
|---|---|---|
| | *Chase Business Debit Card* | *Chase Business ATM Card* |
| *Annual Fee* | **$0** | |
| *Maximum Number of Cards Allowed* | One (1) per person per account | |
| *Zero Liability Protection[11]* | Yes | |
| *Primary Business Checking Accounts* | Available for Chase Total Business Checking, Chase Performance Business Checking, Chase Analysis Business Checking or Chase Platinum Business Checking account (interest counterparts included, where applicable) | |
| *Other* | The Business Debit Card and Business ATM Card may be issued only to owners/signers of the business | |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

**Deposit Account Agreement – Business Product Information**

| BUSINESS DEBIT AND DEPOSIT CARDS FOR EMPLOYEES | | |
|---|---|---|
| | *Chase Business Associate Card* | *Chase Business Employee Deposit Card* |
| *Annual Fee* | **$0** | |
| *Maximum Number of Cards Allowed* | No card limit per employee per account | |
| *Zero Liability Protection*[11] | Yes | |
| *Primary Business Checking Accounts* | Available for Chase Total Business Checking, Chase Performance Business Checking, Chase Analysis Business Checking or Chase Platinum Business Checking account (interest counterparts included, where applicable) | Available for Chase Total Business Checking, Chase Performance Business Checking, Chase Analysis Business Checking, Chase Platinum Business Checking account and IOLTA (interest-bearing counterparts and accounts for municipalities included, where applicable) |
| *Other* | The Business Associate Debit Card may be issued only to an employee of the business, but not a signer already on the account, allowing the employee to deposit, withdraw and purchase, drawing from a primary Business checking account. An employee is defined as a full-time or part-time employee of a business or a contractor for which our client files 1099 reporting and not a client or tenant of the business. The signer can set limits on the card in $100 increments, from $100–$1,000 (not including fees) for withdrawals and $100–$5,000 for spending. However, the business is responsible for all charges and withdrawals made by the employee. Associate Cards cannot be shared by employees and must be closed once an employee leaves the business or the contractor relationship is terminated<br><br>Card will not reissue at expiration date. For a new card, the signer will need to supply the employee's legal name, residential address and date of birth for card opening, and the employee's legal name and the company name will emboss on the card<br><br>Up to an additional three (3) Business checking and up to five (5) Business savings accounts may be linked to a Business Associate Card. When the signer performs any additional linking, beyond the primary Business checking account, the employee will automatically gain the additional ability to transfer funds between any and all accounts their card is linked to, as well as deposit to and, subject to the limits you set, withdraw funds from these additional accounts | The Business Employee Deposit Card may be issued only to an employee of the business, but not a signer already on the account. An employee is defined as a full-time or part-time employee of a business or a contractor for which our client files 1099 reporting, and not a client or tenant of the business. Each card will permit an employee to make deposits into a Business checking or savings account via an ATM or at a Chase branch. The card will not permit the employee to obtain account information, make withdrawals or take any other actions, including performing account maintenance. Business Employee Deposit Cards cannot be shared by employees and must be closed once an employee leaves the business or the contractor relationship is terminated<br><br>Card will not reissue at expiration date. For a new card, the signer will need to supply the employee's legal name, residential address and date of birth for card opening and the employee's legal name and the company name will emboss on the card |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

**Deposit Account Agreement – Business Product Information**

## Footnotes: Business Product Information

1   Minimum Daily Balance must be maintained as of the beginning of the day for each day of the statement period.

2   Only one (1) Chase Ink® Business Card can be linked to one (1) Chase Business Complete Checking account at a time. To link a card, please visit a branch and speak with a banker.

3   The cutoff time on this business day (one day prior to the last day of your bank account statement period) is 7:00 a.m. Eastern Time. For example, if your monthly bank account cycle ends on November 30, your eligible Chase Merchant Services account cutoff for deposits into your Chase Business Complete Checking account is 7:00 a.m. Eastern Time on November 29.

4   Transactions are all deposits and withdrawals made from your account, including deposit tickets. This includes: cash deposited or withdrawn; checks deposited or debited; other ACH items that are deposited or debited; incoming or outgoing electronic transfers; incoming or outgoing wire transfers; and point-of-sale debits. Products such as Chase QuickDeposit and certain cash management products may have additional service fees. Contact your banker or cash management specialist for details.

5   Products such as Chase QuickDeposit and certain cash management products may have additional service fees. Contact your banker or cash management specialist for details.

6   Average beginning day balance is based on the average of your ledger balances at the beginning of each day.

7   We will not charge a non-Chase ATM fee. Fees from the ATM owner/network still apply. A Foreign Exchange Rate Adjustment Fee from Chase will apply for ATM withdrawals in a currency other than U.S. dollars.

8   Qualifying investment accounts must be held in the name of the business and include: Securities (including mutual funds and variable annuities) and investment advisory services. Investment products and services are offered through **J.P. Morgan Securities LLC** (JPMS), a registered broker-dealer and investment advisor, member of FINRA and SIPC. Annuities are made available through Chase Insurance Agency, Inc. (CIA), a licensed insurance agency, doing business as Chase Insurance Agency Services, Inc. in Florida. JPMS, CIA and JPMorgan Chase Bank, N.A. are affiliated companies under the common control of JPMorgan Chase & Co. Products not available in all states.

> **INVESTMENT AND INSURANCE PRODUCTS:**
> **• NOT A DEPOSIT • NOT FDIC INSURED • NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NO BANK GUARANTEE • MAY LOSE VALUE**

9   Federal law also limits the number of withdrawals or transfers (teller and ATM withdrawals and some other transactions are excluded) to six per month on any savings account. See the Limits on Savings Account Withdrawals and Savings Withdrawal Limit Fee sections of the Deposit Account Agreement for details.

10  "Active" is defined as an account with 5 customer initiated transactions per statement period.

11  Zero Liability Protection: Chase reimburses you for any unauthorized debit card transactions made at stores, ATMs, on the phone or online when reported promptly. Certain limitations apply. See Deposit Account Agreement for details.

12  Other financial institutions and Chase may deduct fees and/or charges from the amount of the incoming wires, which will reduce the proceeds credited to your account. Any deductions taken by us may include processing fees charged by Chase.

**Deposit Account Agreement – Business Deposit Express**
JPMorgan Chase Business Deposit Express[SM] Fee Schedule

| Cash Deposit Processing Fees for all Business Checking and Savings Accounts | |
|---|---|
| Fees will apply per month to all cash deposits in excess of the amount listed in the Business Product Features | |
| *Cash Deposited Per Month* | Night Drop, Post Verification and Immediate Verification $2.50 (per $1,000) |
| *Cash Deposited at ATMs* | No Charge |
| *Coin Roll Order* | No Charge |
| *Currency Strap Order* | No Charge |
| *Dual Pouch Plastic Bags* | Fee depends on bags selected |

## Terms & Conditions: Business Deposit Express

1   Business Deposit Express services ("Services") apply to Depository Bags (see paragraph 2) received at the Branches, including but not limited to, night depositories, bulk deposits made over the counter, delivered by Customer's armored car or courier, Bank Commercial Deposit Machines and Commercial Cash Centers. Upon request, the Bank shall issue Customer a key to certain designated vault facilities ("Facilities").

2   Customer shall utilize tamper-resistant disposable bags ("Depository Bags") which conform to such standards as the Bank may establish from time to time.

3   Customer agrees to the following:

   a. The Facilities shall only be used for the delivery to the Bank of Depository Bags which shall contain only currency and/or negotiable instruments together with a deposit ticket prepared by the Customer.

   b. The Bank may, prior to verification of the contents of the Depository Bag, provisionally credit Customer's account based on the amount stated on Customer's deposit ticket.

   c. The Bank shall, not in the presence of Customer, count and verify the contents of the Depository Bags. The Bank's count shall be controlling and final and the Bank will notify Customer of any adjustment to the amount of the deposit.

   d. No deposit is deemed to be made until the Bank has concluded its verification process and credited Customer's account.

4   The use of the Facilities is at Customer's sole risk and Bank shall not be liable for any loss, destruction or disappearance of any Depository Bag or any part of the alleged contents prior to verification by Bank.

5   The Bank may terminate any of these Services at any time upon notice to Customer. Customer shall promptly return to Bank all Depository Bags and keys to any Facility.

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Deposit Account Agreement – Business Fee Schedule

Unless otherwise indicated or specified in Product Information, fees apply to all checking and savings accounts.

| | | |
|---|---|---|
| *ATM Fees and Debit Card Fees* | **Non-Chase ATM**<br>(Avoid these fees by using a Chase ATM) | **$2.50** for any inquiries, transfers or withdrawals while using a non-Chase ATM in the U.S., Puerto Rico and the U.S. Virgin Islands. Fees from the ATM owner/network still apply<br><br>**$5** per withdrawal and **$2.50** for any transfers or inquiries at ATMs outside the U.S., Puerto Rico and the U.S. Virgin Islands. Fees from the ATM owner/network still apply |
| | **Foreign Exchange Rate Adjustment:** You make card purchases, non-ATM cash transactions or ATM withdrawals in a currency other than U.S. dollars | **3%** of withdrawal amount after conversion to U.S. dollars. For additional information on exchange rates, refer to the Deposit Account Agreement |
| | **Non-ATM Cash:** You use your Chase Debit Card to withdraw cash from a teller at a bank that is not Chase | **3%** of the dollar amount of the transaction **OR**<br>**$5**, whichever is greater |
| | **Card Replacement – Rush Request:**[1] You request express shipping of a replacement debit or ATM card<br>(Avoid this fee by requesting standard shipping) | **$5** per card, upon request |

| | | |
|---|---|---|
| *Overdraft Fees* | **Insufficient Funds:** Chase pays an item when your account does not have enough money<br><br>**Returned Item:** Chase returns an item presented for payment when your account does not have enough money | **$34 fee** for each item (maximum of 6 Overdraft Fees per day, for a total of $204)<br>• We will not charge an Insufficient Funds Fee if your account balance at the end of the business day is overdrawn by $5 or less<br>• We will not charge these fees for any item that is $5 or less, even if your account balance at the end of the business day is overdrawn<br>• The same check or ACH item submitted multiple times by a merchant may result in both a Returned Item Fee and an Insufficient Funds Fee. If we return one of these items, we will only charge you one Returned Item Fee for that item within a 30-day period<br>• Insufficient Funds Fees do not apply to withdrawals made at an ATM |

You can avoid overdrawing your account by making a deposit or transferring funds to cover the overdraft before the business day ends. If you deposit a check, this assumes we do not place a hold and the check is not returned. Here are the cutoff times for some ways of making a deposit or transferring funds from another Chase account:

• At a branch before it closes
• At an ATM before 11 p.m. Eastern Time (8 p.m. Pacific Time)
• When transferring money on chase.com or Chase Mobile® or using Chase QuickPay® with Zelle® before 11 p.m. Eastern Time (8 p.m. Pacific Time)

Additional cutoff times apply to other transfers, including transfer from non-Chase accounts. Please visit chase.com or Chase Mobile for more information and service agreements.

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

# Deposit Account Agreement – Business Fee Schedule

Unless otherwise indicated or specified in Product Information, fees apply to all checking and savings accounts.

| | | |
|---|---|---|
| **Wire Transfer Fees** | **Domestic and International Incoming Wire:** A wire transfer is deposited into your account | **$15** per transfer **OR** **$0** if transfer was originally sent with the help of a Chase banker or using chase.com or Chase Mobile |
| | Other financial institutions and Chase may deduct fees and/or charges, in addition to those described above, from the amount of the incoming wires, which will reduce the proceeds credited to your account. Any deductions taken by us may include processing fees charged by Chase. | |
| | **Domestic Wire:** A banker helps you send a wire from your checking account to a bank account within the U.S. | **$35** per transfer |
| | **Online Domestic Wire:** You use chase.com or Chase Mobile to send a wire from your checking account to a bank account within the U.S. | **$25** per transfer |
| | **International Wire:** A banker helps you send a wire from your checking account to a bank outside the U.S. in either U.S. dollars (USD) or foreign currency (FX) | **$50** per transfer |
| | **Online USD International Wire:** You use chase.com or Chase Mobile to send a wire from your checking account to a bank account outside the U.S. in U.S. dollars (USD) | **$40** per transfer |
| | **Online FX International Wire:** You use chase.com or Chase Mobile to send a wire from your checking account to a bank outside the U.S. in foreign currency (FX) | **$5** per transfer or **$0** per transfer if the amount is equal to $5,000 USD or more |

| | | |
|---|---|---|
| **Other Fees** | **Order for Checks or Supplies:** An order of business checks, deposit slips or other banking supplies | **Varies** (based on items ordered) |
| | **Counter Check:**[1] A blank page of 3 personal checks we print upon your request at a branch | **$2** per page |
| | **Money Order:**[1] A check issued by you, purchased at a branch, for an amount up to $1,000 | **$5** per check |
| | **Cashier's Check:**[1] A check issued by the bank, purchased at a branch, for any amount and to a payee you designate | **$8** per check |
| | **Legal Processing:** Processing of any garnishment, tax levy, or other court or administrative order against your accounts, whether or not the funds are actually paid | Up to **$75** per order |
| | **Stop Payment:** You contact us and a banker places your stop payment request on a check or ACH item | **$30** per request |
| | **Online or Automated Phone Stop Payment:** You use chase.com, Chase Mobile or our automated phone system to place a stop payment on a check. Only some types of stop payments are available | **$25** per request |
| | **Stop Payment Automatic Renewal** | **$4** per item per year |
| | **Deposited Item Returned or Cashed Check Returned:** You deposit or cash an item that is returned unpaid | **$12** per item |
| | **Statement Copy:** Providing additional copies of your statement that you pick up at a branch or ask us to fax or mail | **$6** per statement **OR** **$0** if you view or print your statement on chase.com |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Deposit Account Agreement – Business Fee Schedule

Unless otherwise indicated or specified in Product Information, fees apply to all checking and savings accounts.

| | | |
|---|---|---|
| Online Banking Services | **Personal Financial Management Access:** Optional service that links personal financial management software with chase.com. See chase.com for details | **$9.95** per month |
| | **ACH Payments:** Optional service to initiate electronic (ACH) payments to any checking or savings accounts in the continental U.S. See chase.com for details | **$25** for the first 25 items per month<br>**$0.15** per item above 25 per month<br>**$2.50** return fee |
| | **ACH Collections:** Optional service to initiate electronic (ACH) collections to any checking or savings accounts in the continental U.S. See chase.com for details | **$25** for the first 25 items per month<br>**$0.25** per item above 25 per month<br>**$2.50** return fee |
| | **ACH Debit Block:** Optional service that allows clients to block all or allow some ACH debits from a checking account. See chase.com for details | **$0** monthly fee ($10 monthly fee until 6/1/20)<br>**$0** per allowed Company ID per month ($0.50 per allowed Company ID per month until 6/1/20) |
| | **Check Protection Services (Positive Pay):** Optional service where customers upload a file or enter information about checks they have written, and Chase compares checks presented for payment against that file or entered information to help prevent fraud | **$0** monthly fee per account ($40 monthly fee per account until 6/1/20)<br>**$0** per exception item ($2 per exception item until 6/1/20)<br>**$0** per check return ($15 per check return until 6/1/20) |
| | **Check Monitoring (Reverse Positive Pay):** Optional service that allows customers to monitor checks presented to Chase for payment against checks they have written to help prevent fraud | **$0** monthly fee<br>**$0** per check return ($15 per check return until 6/1/20) |
| | **QuickDeposit – Multiple Feed Check Scanner:** Optional service to remotely scan and deposit checks using a multiple feed check scanner via chase.com. See chase.com for details | **$50** monthly fee |
| | **QuickDeposit – Single Feed Check Scanner:** Optional service to remotely scan and deposit checks using a single feed check scanner via chase.com. See chase.com for details | **$25** monthly fee |
| | **QuickDeposit – Cancellation Fee:** Charged if QuickDeposit service cancelled within first 2 years of enrollment. See chase.com for details | **$250** |
| | **QuickDeposit – Additional Multiple Feed Check Scanner:** Charged for additional multiple feed check scanner ordered. See chase.com for details | **$600** per scanner |
| | **QuickDeposit – Additional Single Feed Check Scanner:** Charged for additional single feed check scanner ordered. See chase.com for details | **$300** per scanner |

**NOTE: Refer to the Fee Schedule and Product Information for fees and additional benefits that may apply to your account.**

## Footnotes: Business Fee Schedule

1  Does not apply to Chase Platinum Business Checking, Chase Performance Business Checking, Chase Performance Business Checking with Interest, Chase Analysis Business Checking or Chase Analysis Business Checking with Interest.

## Deposit Account Agreement – Card Purchase and Withdrawal Limits

Limits are based on the card you use and which type of ATM you use.

| DAILY LIMITS | | | | |
|---|---|---|---|---|
| *Card Type* | *Purchase Limit* | *Chase In-Branch ATM Limit* | *Other Chase ATM Limit* | *Non-Chase ATM Limit* |
| *Chase Business Debit Card*<br>*Chicago Skyline Business Debit Card (IL only)* | $10,000 | $3,000 | $1,000 | $500 ($1,000 for accounts opened in CT, NJ, NY, TX) |
| *Chase Platinum Business Debit Card* | $15,000 | $3,000 | $3,000 | $1,000 |
| *Chase Business ATM Card* | $0 | $3,000 | $1,000 | $400 ($1,000 for accounts opened in CT, NJ, NY, TX) |

These are the standard limits that come with your card, but you can request a different ATM or Purchase Limit (subject to approval). If your checking account is changed, we may provide you a new debit card that aligns with that account.

When you use a Chase ATM it is either considered an In-Branch ATM or Other Chase ATM.

- **Chase In-Branch ATMs** are ATMs located inside the main area of a Chase branch that you use during the branch's posted business hours.
- **Other Chase ATMs** include ATMs located inside the main area of a Chase branch that you use outside of the branch's posted business hours, ATMs that are separated from the main area of a branch by another set of doors, drive-up ATMs and other Chase ATMs not located in or near a branch.

The Chase In-Branch ATM Limit is separate from all other limits, which means that withdrawals at a Chase In-Branch ATM do not count towards a cardholder's Other Chase ATM or Non-Chase ATM Limits for the same business. When you use a Chase In-Branch ATM, all withdrawals made with any of a cardholder's ATM or debit cards for the same business count toward every card's Chase In-Branch ATM Limit.

When you use an Other Chase ATM or a Non-Chase ATM, all withdrawals count toward the Other Chase ATM Limits for all of a cardholder's ATM or debit cards for the same business and count toward only that card's Non-Chase ATM Limit.

**Special rules for Business Associate Cards:**
The Associate Card has daily limits for ATM withdrawals and purchases which are set by the account owner (not to exceed $1,000 for ATM withdrawals and $5,000 for purchases). Withdrawals at any ATM count towards the daily limit, and Associate Card withdrawals do not count towards the cardholder's limit on other cards.

# CHASE BUSINESS OVERDRAFT SERVICES

An overdraft occurs when you don't have enough money available in your checking account to cover a transaction. We have a Standard Overdraft Practice that comes with Chase business checking accounts and also offer Overdraft Protection and Chase Business Debit Card Coverage, which are optional services that can help pay overdrafts when they occur.

## STANDARD OVERDRAFT PRACTICE:

*Included with Chase Total Business Checking, Chase Performance Business Checking, Chase Platinum Business Checking, Chase Analysis Business Checking and interest-bearing counterparts (where applicable).[1]*

### WHAT IT IS:
Our Standard Overdraft Practice may pay, for a fee, overdraft transactions at our discretion based on your account history, deposits you make and the transaction amount. We do **NOT GUARANTEE** we will always pay your overdraft transaction, and if we do not pay your transaction, the transaction will be **declined** or **returned** unpaid. If we return an item unpaid, you may be charged a fee.

### WHAT IT PAYS:
- Checks
- Automatic Payments (e.g. recurring phone bill, utility bill, recurring vendor payments)
- Recurring debit card purchases (e.g. subscriptions)
- **NOT** covered: Everyday debit card transactions (e.g. office supplies, everyday expenses)

### WHAT IT COSTS:
- **If Paid: $34 Insufficient Funds Fee per item[2]**
- **If Check or Automatic Payment is Returned: $34 Returned Item Fee[2].** The same item submitted multiple times by a merchant may result in both a Returned Item Fee and an Insufficient Funds Fee. If we return one of these items, we will only charge you one Returned Item Fee for that item within a 30-day period
- **If recurring debit card transaction is Declined:** Transaction will NOT go through and you will NOT be charged a fee
- Maximum of 6 of either of these fees per day, for a total of $204
- These fees are not charged if your account balance at the end of the business day is overdrawn by $5 or less, or for items that are $5 or less

## Posting Order

We look at your account only once to decide if the item would cause your account to become overdrawn.

We post transactions to your account during each business day's overnight processing which is generally completed before our branches open the next day. The order in which we generally apply deposits and withdrawals to your account each business day:

- First, we add deposits to your account.
- Second, we subtract everyday (not recurring) debit card transactions, online banking transactions, ATM withdrawals, teller cash withdrawals, check you write that are either cashed or deposited by a Chase branch banker, or wire transfers. We subtract all of these transactions in chronological order by using the date and time of each transaction. If we do not know the time of day you made a transaction, such as for some everyday debit card transactions, then it is posted as if it was made at the end of the day. Multiple transactions without a time stamp are subtracted starting with those having the highest dollar amount and moving to the lowest.
- Third, we subtract all other items, including checks you wrote that are either cashed or deposited at an ATM, and recurring debit card transactions starting with those having the highest dollar amount and moving to the lowest. We reserve the right to use a different order in certain states, such as Nevada.
- Finally, fees are assessed last.

It's your responsibility to avoid overdrawing your account.

## Knowing your balance may help you avoid fees

Use any of these options to check your balance before you make a purchase.

 Sign up for Account Alerts
Go to chase.com/AccountAlerts

 Use Chase Mobile

 Log on to chase.com

 Use any Chase ATM

 Call 1-800-935-9935
(we accept operator relay calls)

1 Returned Item Fees may apply.
2 The Chase Platinum Business Checking account waives one Insufficient Funds Fee and one Returned Item Fee per monthly statement period. Returned Deposited Item or Cashed Check Fees are not charged on Chase Platinum Business Checking. Please speak to your banker to learn more.

**If you have questions, please call us at 1-800-242-7338 (we accept operator relay calls).**

## OVERDRAFT PROTECTION:

**WHAT IT IS:** Allows you to link an Overdraft Protection backup funding account—a Chase business savings account or a Chase business line of credit—to your checking account to help pay any overdraft transactions that may occur. The exact amount needed to cover the transaction will be transferred if enough funds are available.

**WHAT IT PAYS: All transactions**, including everyday debit card transactions

## WHAT IT COSTS:
- There is not a fee for an Overdraft Protection transfer; however, an Overdraft Protection transfer counts toward savings withdrawal limits:
  - A **$5 Savings Withdrawal Limit Fee**, which is a Chase fee, applies for each withdrawal or transfer out of a Chase business savings account over six per monthly statement period. All withdrawals and transfers out of your business savings account count toward this fee, including those made at a branch or at an ATM
  - **Federal Regulations** also limit you to six savings account withdrawals or transfers per monthly statement period. However, this limit does not apply to withdrawals or transfers made in person at a branch or at an ATM. If you exceed the federal limits on withdrawals, we will notify you and may convert your savings account to a Chase business checking account
- Business Line of Credit Transfer: You will pay interest as stated in the Line of Agreement

**Establishing or Canceling Overdraft Protection:** Any owner of both a qualifying checking account and the backup account may enroll in Overdraft Protection without the consent of other owners, and both accounts must share at least one owner to maintain Overdraft Protection. Any owner of the checking account or the backup account may cancel Overdraft Protection (by terminating the service or closing the account) without the consent of other owners. A backup account can provide Overdraft Protection for more than one checking account, but a checking account can have only one backup account. A personal checking account may be linked to a Chase personal savings account; and a business checking account may be linked to a Chase business savings account or a business line of credit in good standing. We may cancel your Overdraft Protection service at any time. Your request to add or cancel Overdraft Protection will become effective within a reasonable time after approval.

**Transfers:** We will make one Overdraft Protection transfer per business day that will appear on your statement for both accounts. If you have enough available funds in your backup account, we will automatically transfer enough to bring your checking account balance to zero. If you do not have enough available funds in your backup account to bring your checking account balance to zero, but you have enough available funds to pay one or more transactions and/or your previous day's negative balance, we will transfer that amount. If the amount transferred does not bring your checking account balance to zero, your checking account will become overdrawn and you may be charged Insufficient Funds or Returned Item Fees. If we authorize your transaction, we will leave the funds in your backup account until we pay the transaction, which may take several days. However, if you use those funds before the transaction is paid there will not be available funds to make the transfer and your checking account may become overdrawn and charged an Insufficient Funds Fee. The available balance for a savings account is determined at the time that we authorize a transaction or at the end of business day processing. The available balance for a business line of credit is determined at the end of the previous business day processing. We are not required to notify you if funds from the backup account cannot be transferred for Overdraft Protection ( for example if the account is dormant, purged, restricted or not in good standing). Refer to the section *Restricting Your Account; Blocking or Delaying Transactions* for additional information.

## CHASE BUSINESS DEBIT CARD COVERAGE:

**WHAT IT IS:** Allows you to choose how we treat your **EVERYDAY DEBIT CARD** transactions. If you don't have Overdraft Protection, or you don't have enough funds in your linked Overdraft Protection backup account, and:
- You select **YES** (default choice), we may pay the overdraft transaction at our discretion based on your account history, deposits you make and the transaction amount. Standard Overdraft Practice fees apply
- You select **NO**, the transaction will be **declined** and you will NOT be charged a fee

**Regardless of your Business Debit Card Coverage decision, if you are enrolled in Overdraft Protection and you have enough money in your linked Overdraft Protection backup account, your transaction will be approved and a transfer will be made.**

**WHAT IT PAYS:** Everyday debit card transactions **ONLY**

## WHAT IT COSTS:
- **If Paid: $34 Insufficient Funds Fee per item**[2]
  - Maximum of 6 fees per day, for a total of $204
  - This fee is not charged if your account balance at the end of the business day is overdrawn by $5 or less, or for items that are $5 or less
- **If Declined:** Transaction will NOT go through and you will NOT be charged a fee

  **IMPORTANT INFORMATION** – See your Deposit Account Agreement for full details on all products and services.

**If you have questions, please call us at 1-800-242-7338 (we accept operator relay calls).**

Learn how your transactions will work:

## EVERYDAY DEBIT CARD PURCHASES[1] (Not recurring)

**STEP 1**
Is there enough money available in your checking account?

 **YES**
Transaction Approved

**NO**
Proceed to Step 2

**STEP 2**
OVERDRAFT PROTECTION
Is enough money available in your checking account plus your linked Overdraft Protection backup account (savings or business line of credit)?

 **YES**
Transaction Approved

The exact amount needed to cover the transaction will be transferred.

**NO (or you do NOT have a backup account)**
Proceed to Step 3

**STEP 3**
CHASE BUSINESS DEBIT CARD COVERAGE
By default, you are automatically enrolled in Chase Business Debit Card Coverage.

**(!) YES (Default Choice)**
Transaction Approved or Declined

We may **approve** your transaction at our discretion based on your account history, deposits you make and the transaction amount. If approved, you will be charged a $34 Insufficient Funds Fee per item (max 6 Overdraft Fees per day, for a total of $204).

If **declined**, transaction does NOT go through and you are NOT charged a fee.

 **NO (you opted out)**
Transaction Declined

Transaction does NOT go through and you are NOT charged a fee.

## CHECKS, AUTOMATIC PAYMENTS OR RECURRING DEBIT CARD PURCHASES[2]

**STEP 1**
Is there enough money available in your checking account?

 **YES**
Transaction Approved

**NO**
Proceed to Step 2

**STEP 2**
OVERDRAFT PROTECTION
Is enough money available in your checking account plus your linked Overdraft Protection backup account (savings or business line of credit)?

**YES**
Transaction Approved

The exact amount needed to cover the transaction will be transferred.

**NO (or you do NOT have a backup account)**
Proceed to Step 3

**STEP 3**
STANDARD OVERDRAFT PRACTICE NOW APPLIES
Transaction **approved** or **returned/declined** at our discretion based on your account history, deposits you make and the transaction amount.

 **APPROVED**

If approved, you will be charged a $34 Insufficient Funds Fee per item (max 6 Overdraft Fees per day, for a total of $204).

 **RETURNED/DECLINED**

If check or automatic payment is returned, you will be charged a $34 Returned Item Fee per item (max 6 Overdraft Fees per day, for a total of $204).

If recurring debit card transaction is declined, the transaction does NOT go through and you are NOT charged a fee.

1  Everyday debit card purchases are one-time purchases or payments, such as office supplies or everyday expenses.
2  Recurring debit card purchases include transactions such as phone bills, utility bills and recurring vendor payments.

**If you have questions, please call us at 1-800-242-7338 (we accept operator relay calls).**

Confirm your choice:

YOU ATTEMPT A TRANSACTION WITHOUT ENOUGH MONEY IN YOUR CHECKING ACCOUNT

| YOUR CHOICE TODAY | TYPE OF TRANSACTION | IF YOU HAVE ENOUGH MONEY IN YOUR LINKED OVERDRAFT PROTECTION BACKUP ACCOUNT | IF YOU DO **NOT** HAVE ENOUGH MONEY IN YOUR LINKED OVERDRAFT PROTECTION BACKUP ACCOUNT |
|---|---|---|---|
| **STANDARD OVERDRAFT PRACTICE** | If both Overdraft Protection and Business Debit Card Coverage are declined, our Standard Overdraft Practice will apply. | | |
| | Check, Automatic Payment, Recurring Debit Card | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** or **$34 Returned Item Fee³** per item (no linked backup account) | |
| | Everyday Debit Card | Transaction Declined **NO FEE** (no linked backup account) | |
| ⊔ **OVERDRAFT PROTECTION** | Check, Automatic Payment, Recurring Debit Card | Transaction Approved and transfer made—**No Overdraft Protection Transfer Fee** | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** or **$34 Returned Item Fee³** per item |
| | Everyday Debit Card | Transaction Approved and transfer made—**No Overdraft Protection Transfer Fee** | Transaction Declined **NO FEE** |
| ⊔ **BUSINESS DEBIT CARD COVERAGE** (Default Choice) | Check, Automatic Payment, Recurring Debit Card | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** or **$34 Returned Item Fee³** per item (no linked backup account) | |
| | Everyday Debit Card | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** per item (no linked backup account) | |
| ⊔ **BUSINESS OVERDRAFT PROTECTION** *and* **BUSINESS DEBIT CARD COVERAGE** | Check, Automatic Payment, Recurring Debit Card | Transaction Approved and transfer made—**No Overdraft Protection Transfer Fee** | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** or **$34 Returned Item Fee³** per item |
| | Everyday Debit Card | Transaction Approved and transfer made—**No Overdraft Protection Transfer Fee** | Transaction Approved or Declined at Chase's discretion **$34 Insufficient Funds Fee³** per item |

**If a recurring debit card transaction is declined, the transaction does not go through and you are not charged a fee.**

**You can avoid overdrawing your account by making a deposit or transferring funds to cover the overdraft before the business day ends. If you deposit a check, this assumes we do not place a hold and the check is not returned. Here are the cutoff times for some ways of making a deposit or transferring funds from another Chase account:**
- **At a branch before it closes**
- **At an ATM before 11 p.m. Eastern Time (8 p.m. Pacific Time)**
- **When transferring money on chase.com or Chase Mobile or using Chase QuickPay® with Zelle® before 11 p.m. Eastern Time (8 p.m. Pacific Time)**

**Additional cutoff times apply to other transfers, including transfers from non-Chase accounts. Please visit chase.com or Chase Mobile for more information and service agreements.**

3 The Chase Platinum Business Checking account waives one Insufficient Funds Fee and one Returned Item Fee per monthly statement period. Returned Deposited Item or Cashed Check Fees are not charged on Chase Platinum Business Checking. Please speak to your banker to learn more.

**If you have questions, please call us at 1-800-242-7338 (we accept operator relay calls).**

# CHASE ◼

PO Box 182051
Columbus, OH 43218-2051

**Questions?**

▭  Chase.com

☎  1-877-691-8086

We accept operator relay calls

02864 LAD 111 020 20020 NNNNNNNNNNNN LAD59 E
**DRIVERDO LLC**
7900 COLLEGE BLVD STE 141
OVERLAND PARK KS 66210-2194

July 18, 2020

**Important:** **You cannot use your account(s), and we will close it soon**

Dear DRIVERDO LLC:

We blocked the account ending in 2126, 2159 and will close it soon. We're doing this because of recent activity on the account, or because you didn't provide information we requested.

**We may be able to keep your account open**
If you have the information we requested, please call 1-877-▮▮▮▮▮▮▮. We're here from 7 a.m. to 1 a.m. Eastern Time. If you're calling from outside the United States, please call us collect at 1-713-▮▮▮▮▮▮▮.

**While the account is blocked, here's what to expect**
- You cannot withdraw money, make purchases, or sign in to chase.com and Chase Mobile®.
- You should deposit money at a branch if the account is overdrawn. Otherwise, we may take money from another Chase account on which you're a signer, including a joint account.
- Checks associated with the account will not be honored.
- We may reject direct deposits and automatic payments, so please notify any companies that send or receive these transactions.

If we close the account, we'll confirm your final deposits and payments. If there is a remaining balance, we'll mail you a check. You should also destroy the access checks and debit, ATM or prepaid cards associated with the account for your protection.

Thank you for your time with this information.

Sincerely,

Customer Service

JPMorgan Chase Bank, N.A. Member FDIC

EXHIBIT 2



U.S. Small Business
Administration

**Mashhur Haque** ⌄

APPLICATION  >  PROCESSING  >  **FUNDING**

## Your Quote

**Status: Funded**
# $500,000

## Status

**Funds have been disbursed
to your account.**

## Steps to Complete

**Verify Identity**
**Completed**

[ View ]

**Electronic Disbursement**
**Completed**

[ View ]

**Review and Sign Closing Documents**
**Completed**

[ View ]

### BUSINESS PROFILE

**Application #:** ▮▮▮▮▮▮

**DriverDo LLC**
*7900 COLLEGE BLVD STE 141
OVERLAND PARK KS 66210*

### Questions?

**Call 1-800-**▮▮▮▮▮
**TTY/TDD: 1-800-**▮▮▮▮▮
Monday-Sunday, 8 a.m.-8 p.m. ET

**Email the SBA**
disastercustomerservice@sba.gov

GROUP EXHIBIT 3

 **U.S. Small Business Administration**

**Mashhur Haque** ⌄

 **🏠 Home**

# Electronic Disbursement

## Tell us where we should send the funds.

### BANK INFORMATION

**Bank Name**
JPMorgan Chase Bank, N.A.

**Name On Account**
DriverDo LLC

**Account Number**
████2126

**Routing Number**
██████

**Continue**

### BUSINESS PROFILE

**Application #:** ████████

**DriverDo LLC**
*7900 COLLEGE BLVD STE 141*
*OVERLAND PARK KS 66210*

## Questions?

**Call 1-800-**████████
**TTY/TDD: 1-800-**████████
Monday-Sunday, 8 a.m.-8 p.m. ET

**Email the SBA**
disastercustomerservice@sba.gov



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 01, 2020 through July 31, 2020

Account Number: ███████2159

**CUSTOMER SERVICE INFORMATION**

| | | |
|---|---|---|
| Web site: | | www.Chase.com |
| Service Center: | | **1-877-** |
| Deaf and Hard of Hearing: | | 1-800- |
| Para Espanol: | | 1-888- |
| International Calls: | | 1-713- |



DRIVERDO LLC
7900 COLLEGE BLVD STE 141
OVERLAND PARK KS 66210-2194

## CHECKING SUMMARY   Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$8,633.10** |
| Deposits and Additions | 20 | |
| Checks Paid | 1 | |
| Electronic Withdrawals | 48 | |
| Other Withdrawals | 3 | |
| **Ending Balance** | 72 | $159,314.88 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

## DEPOSITS AND ADDITIONS



| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | | |
| 07/01 | | |
| 07/02 | | |
| 07/02 | | |
| 07/03 | | |
| 07/06 | | |
| 07/07 | | |
| 07/07 | | |
| 07/09 | | |
| 07/09 | | |
| 07/09 | | |

GROUP EXHIBIT 4



July 01, 2020 through July 31, 2020
Account Number: ████████159

## DEPOSITS AND ADDITIONS *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/09 | | |
| 07/10 | | |
| 07/10 | | |
| 07/13 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/16 | Fedwire Credit Via: Fifth Third Bank | 154,106.88 |
| 07/20 | Online Transfer From Chk ...2126 | 38,000.00 |

**Total Deposits and Additions**

## CHECKS PAID

| | DATE |
|---|---|

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | | |
| 07/01 | | |
| 07/01 | | |
| 07/02 | | |
| 07/02 | | |
| 07/03 | | |
| 07/03 | | |
| 07/06 | | |
| 07/06 | | |
| 07/06 | | |
| 07/06 | | |
| 07/06 | | |



July 01, 2020 through July 31, 2020
Account Number: ████████████2159

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/06 | | |
| 07/06 | | |
| 07/07 | | |
| 07/07 | | |
| 07/07 | | |
| 07/07 | | |
| 07/07 | | |
| 07/08 | | |
| 07/08 | | |
| 07/09 | | |
| 07/09 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/13 | | |
| 07/13 | | |
| 07/13 | | |





July 01, 2020 through July 31, 2020
Account Number: ▉▉▉▉▉2159

## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/13 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/15 | 07/15 Online ACH Payment | 3,500.00 |
| 07/15 | | 5,000.00 |
| 07/15 | | 25.60 |
| 07/16 | 07/16 Online Transfer To | 1,500.00 |
| 07/16 | | 58.51 |
| 07/17 | 07/17 Online Domestic Wire Transfer | 10,000.00 |
| **Total Electronic Withdrawals** | | |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/20 | Online ACH Payment | $20,000.00 |
| 07/20 | Online Payment | 1,540.21 |
| 07/20 | Online Payment | 1,523.00 |
| **Total Other Withdrawals** | | **$23,063.21** |

## DAILY ENDING BALANCE





July 01, 2020 through July 31, 2020

Account Number: ████████2159

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

## IMAGES

ACCOUNT ████████2159

See both front and back images of cleared checks at Chase.com. If you're not enrolled in this free service, please enroll now.





July 01, 2020 through July 31, 2020

Account Number: 2159

This Page Intentionally Left Blank



**CHASE** ○

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 01, 2020 through July 31, 2020

Account Number: ████ 2126

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **www.Chase.com** |
| Service Center: | **1-877-** |
| Deaf and Hard of Hearing: | 1-800- |
| Para Espanol: | 1-888- |
| International Calls: | 1-713- |

00001718 DRI 111 212 21820 NNNNNNNNNNN  1 000000000 Z9 0000

DRIVERDO LLC
7900 COLLEGE BLVD STE 141
OVERLAND PARK KS 66210-2194

## CHECKING SUMMARY    Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | ███ |
| Deposits and Additions | 53 | |
| Electronic Withdrawals | 21 | |
| Other Withdrawals | 1 | |
| Fees | 1 | |
| **Ending Balance** | 76 | $41,440.90 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | | |
| 07/01 | | |
| 07/01 | | |
| 07/01 | | |
| 07/02 | | |
| 07/02 | | |





July 01, 2020 through July 31, 2020
Account Number: ████████████ 2126

## DEPOSITS AND ADDITIONS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/02 | | |
| 07/02 | | |
| 07/02 | | |
| 07/06 | | |
| 07/06 | | |
| 07/06 | | |
| 07/07 | | |
| 07/07 | | |
| 07/07 | | |
| 07/07 | | |
| 07/08 | | |
| 07/08 | | |
| 07/08 | | |
| 07/08 | | |
| 07/08 | | |
| 07/09 | | |
| 07/09 | | |
| 07/09 | | |





July 01, 2020 through July 31, 2020
Account Number: ███████████2126

## DEPOSITS AND ADDITIONS *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/09 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/10 | | |
| 07/13 | | |
| 07/13 | | |
| 07/13 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/15 | | 36,858.40 |
| | Ref*Ck* | |
| 07/15 | | 1,800.00 |
| 07/15 | | 42.78 |
| 07/16 | Fedwire Credit Via: | 15,000.00 |
| 07/16 | | 35,744.02 |
| 07/16 | | 13,788.70 |
| | Ref*Ck* | |



July 01, 2020 through July 31, 2020
Account Number: ████████2126

## DEPOSITS AND ADDITIONS  *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/16 | ██████████████████████ Ref*Ck* ████████ | 8,304.06 |
| 07/16 | ██████████████████████ Ref*Ck* ████████ Tc | 2,458.70 |
| 07/16 | Online Transfer From Chk████████████ | 1,500.00 |
| 07/16 | ██████████████████████ | 650.00 |
| 07/16 | ████████████ ████████████ | 14.26 |
| 07/20 | ██████████████████████ Ind Name:Driverdo LLC  Ref*Ck | 24,410.55 |
| 07/20 | ██████████████ Ind Name:Driverdo LLC  Ref*Ck* | 13,356.81 |
| 07/20 | ██████████████████████ | 14.26 |
| 07/21 | ██████████████████████ Ind Name:Driverdo LLC  Ref*Ck | 24,985.95 |
| 07/21 | ██████████████ Ind Name:Driverdo LLC  Ref*Ck | 1,400.00 |
| 07/22 | ██████████████ Ind Name:Driverdo LLC  Ref*Ck | 7,971.03 |
| 07/22 | ██████████████ Ind Name:Driverdo LLC  Ref*Ck | 6,096.10 |

**Total Deposits and Additions**      **$631,061.30**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/01 | | |
| 07/01 | | |
| 07/02 | | |
| 07/02 | | |
| 07/02 | | |
| 07/03 | | |
| 07/03 | | |
| 07/06 | | |
| 07/07 | | |
| 07/07 | | |
| 07/09 | | |
| 07/09 | | |
| 07/09 | | |





July 01, 2020 through July 31, 2020

Account Number: ██████████ 2126

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/09 | ████████████████████████████████████████ | |
| 07/10 | | |
| 07/10 | | |
| 07/13 | | |
| 07/14 | | |
| 07/14 | | |
| 07/14 | | |
| 07/16 | 07/16  ████████ 7.16.20.Csv Batch:100 | 124,827.57 |
| **Total Electronic Withdrawals** | | ████████ |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/20 | Online Transfer To ████████████████████ | $38,000.00 |
| **Total Other Withdrawals** | | **$38,000.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/06 | Service Charges For The Month of June | $563.85 |
| **Total Fees** | | **$563.85** |

## DAILY ENDING BALANCE



## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |



July 01, 2020 through July 31, 2020
Account Number: ▉▉▉▉▉▉2126

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

---