IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRIVERDO LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 20 C 5046 ) |
| JP MORGAN CHASE BANK, N.A., | ) Judge Joan H. Lefkow ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

DriverDo LLC brought this action against JP Morgan Chase Bank, N.A. Chase has moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 34). For the reasons given below, the motion is granted in part and denied in part.

**BACKGROUND**[1]

DriverDo is a technology services company that provides remote transportation management services in the auto industry. (Dkt. 32 at 1, ¶1.) In 2019, it opened two business accounts at Chase, ending in 2126 and 2159. (*Id.* at 2, ¶6.) DriverDo used these accounts to receive revenues and pay expenses and costs. (*Id.* ¶9.)

DriverDo's relationship with Chase was governed by a "Deposit Account Agreement and Terms and Conditions" (account agreement). (*Id.* ¶10.) The account agreement required that Chase make any deposited funds available by the third business day after deposit and if there were any delay, Chase would notify DriverDo of the delay, the reason for it, and when the funds

---

[1] This case comes to the court on a motion to dismiss under Rule 12(b)(6), so the following facts are taken from the amended complaint. *See infra* Legal Standard.

would be made available. (*Id*. at 2–3, ¶12.) The account agreement also required that Chase provide a 30-day written notice of an intent to terminate the accounts. (*Id*. at 2, ¶11.)

On July 17, 2020, DriverDo chief financial officer Daniel Rizzo was unable to access DriverDo's accounts. (*Id*. at 3, ¶¶15–16.) Rizzo and chief executive officer Mashhur Zarif Haque both separately contacted Chase customer service and were told that the accounts were closed and that Chase had decided to terminate its relationship with DriverDo. (*Id*. ¶¶16–17.) Haque also was told that the accounts were restricted so that any debits would be rejected, while incoming funds would still be credited. (*Id*.)

On July 18, Rizzo went to a Chase branch and learned that the accounts had been closed and restricted on July 15, and that Haque had been notified of the closures that same day, although Haque did not receive notice until July 17. (*Id*. at 3–4, ¶19.) Rizzo was denied access to the funds and was told that he could no longer withdraw them. (*Id*. at 4, ¶20.)

That same day, Chase sent five letters to DriverDo regarding its account ending in 2159, informing it that six transactions had been cancelled. (*Id*. ¶21.) Chase also informed DriverDo by letter that both accounts would be closed, but no close date was provided. (*Id*. ¶22.) The letter also stated that DriverDo could not withdraw money from the accounts and that direct deposits and automatic payments may be rejected. (*Id*. at 5, ¶22.)

Haque contacted customer service again and was told that the accounts were on restricted status for up to 10 business days, they would eventually be closed, and the funds would be sent to DriverDo. (*Id*. ¶23.) Haque was again told that debits would be rejected but incoming funds would be received. (*Id*.)

Chase also told Haque that the account restrictions and closures were due to an attempted withdrawal of $96,335.00 from its account ending in 2150 that occurred on July 15. (*Id*. ¶24.)

Chase said that it had sent nine alerts to Haque and Rizzo regarding the withdrawal attempt but received no response. (*Id*. ¶25.) Haque and Rizzo never received any alerts. (*Id*. ¶26.) Chase provided no information on why access had been restricted or how to lift the restrictions. (*Id*. at 6, ¶28.) Nor did Chase provide DriverDo information about the withdrawal attempt, the reason for closing the accounts, or a date when the restrictions would be lifted. (*Id*. ¶¶29–30.)

Later, Haque sent an email to Chase business relationship manager Hiram Velez, describing the events of the past few days and requesting that the funds be released if Chase was terminating the accounts. (*Id*. ¶27.) Haque and Rizzo continued to request that Chase lift the restrictions and release all funds but were advised that the funds would be released within 10 business days of July 15. (*Id*. at 7, ¶¶36–37.)

On July 27, DriverDo secured an Economic Injury Disaster Loan (EIDL) for $500,000.00 (minus a $100 loan fee) through the Small Business Administration (SBA). (*Id*. at 8, ¶40.) That same day, DriverDo received confirmation from the SBA that the funds had been disbursed into its account ending in 2126. (*Id*. at ¶41.) Haque also received a text from Velez stating that the accounts were still restricted. (*Id*. at 6, ¶31.) He contacted Chase customer service and was told that he would have to wait 10 business days from July 15 or July 17 to access the funds. (*Id*.)

On July 28, Haque received another text from Velez informing him that the accounts were still restricted. (*Id*. ¶32.) Two days later, on July 30, Chase informed Haque that it had received the EDIL funds, but it would not post the funds until the following day. (*Id*. at 8, ¶¶43–44.)

On July 31, Haque received another text from Velez, stating the accounts were still restricted and closed. (*Id*. at 6, ¶33.) He contacted Chase customer service and was told that Chase would send a check for $104,420.78, which was only a portion of the total funds. (*Id*. at

3

6–7, ¶33.) Regarding the SBA funds, Chase told Haque that the bank could not reject them but could not say when they would be made available. (*Id*. at 8, ¶45.)

Haque and Rizzo continued to inquire about the SBA funds and were given varying answers as to their availability. (*Id*. at 9, ¶46). They also continued to inquire about the status of the other account funds but were given no information. (*Id*. at 7, 9, ¶¶34, 48.)

On August 6, a Chase representative told Rizzo that a check was sent for the initial $104,420.78, but no information on the remaining amount was given. (*Id*. at 6–7, ¶33.) That same day, the SBA filed a UCC lien against DriverDo in connection with the EIDL, despite DriverDo not being in possession of the funds. (*Id*. at 9, ¶47.) Due to the situation with Chase, DriverDo was required to submit additional documentation to the SBA regarding the EIDL loan. (*Id*.)

Also on August 6, Haque requested from Velez the most recent account statements. (*Id*. at 9, ¶49.) On August 10, Haque received statements for July 1 through July 31, 2020. (*Id*. ¶50.) The statement for its account ending in 2159 showed a balance of $159,314.88, that the last deposit had been made on July 20, and the last withdrawal on July 17. (*Id*. at 10, ¶52.) The statement for its account ending in 2126 showed a balance of $41,440.90, that the last deposit had been made on July 22, and the last withdrawal on July 20. (*Id*. ¶53.) The statements did not reflect receipt of the SBA funds. (*Id*. ¶51.)

On August 11, a Chase representative told Rizzo that the accounts were still restricted, but that the remaining funds would be released. (*Id*. at 7, ¶35.) By August 15, DriverDo received a second check from Chase in the amount of $96,335.00. (*Id*. ¶38).

Following these events, DriverDo brought an action against Chase in state court. (Dkt. 1.) Chase removed the action to federal court. (Dkt. 22.) In count I, DriverDo sought a declaration

4

that Chase violated the Expedited Funds Availability Act (EFAA), 12 U.S.C. §§ 4001 *et seq.*, based on Chase's failure to make deposits available per a specified schedule and its failure to provide an explanation as to when the funds would be made available or why they could not be made available. (Dkt. 32 at 11–14.) In count II, DriverDo alleged breach of contract based on Chase's failure to give DriverDo a 30-day written notice of its intent to close the accounts and make the funds available as required under the account agreement. (*Id*. at 14–16.) In count III, DriverDo brought a "negligence and gross negligence" claim, asserting that Chase breached its duties to DriverDo under banking standards, the account agreement, and federal and state law. (*Id*. at 16–18.) In count IV, DriverDo alleged negligent misrepresentation based on Chase's false representations to DriverDo regarding when the funds would be made available. (*Id*. at 18–20.) In count V, DriverDo alleged conversion, based on Chase's restriction of access to its accounts. (*Id.* at 20–21.)

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On a motion under Rule 12(b)(6), the complaint's factual allegations, not legal conclusions, are taken as true and all reasonable inferences are drawn in plaintiff's favor. *See Iqbal*, 556 U.S. at 678–79; *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011). At this stage, a court may consider "documents attached to the complaint, documents central to the complaint and referred to in it,

and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp.* v. *Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (cleaned up).

## ANALYSIS

After Chase filed its motion to dismiss, the court ordered Chase to show cause why the declaratory relief sought in count I for the EFAA claim was not moot and the court should not relinquish jurisdiction over the state-law claims as provided under 28 U.S.C. § 1367. (Dkt. 44.) Chase responded that declaratory relief was not moot because the court could still award damages for the EFAA claim; even if moot, the court should retain supplemental jurisdiction over the state-law claims; and the court should revisit diversity jurisdiction and compel DriverDo to disclose the citizenship of the four remaining members whose citizenship is still unknown. (Dkt. 45.) After considering Chase's response to the rule to show cause and motion to dismiss, the court rules as follows.

**I.      Count I states an EFAA claim but is dismissed without prejudice because the requested declaratory relief accomplishes no effectual relief.**

The EFAA and its implementing regulations, known as Regulation CC, standardize the hold periods on deposits made to commercial banks and regulates deposit holds. *See Bank One Chi., N.A.* v. *Midwest Bank & Trust Co.*, 516 U.S. 264, 266 (1996). Under section 4002(a)(1) of the EFAA, funds received by wire transfer "shall be available for withdrawal not later than the business day after the business day on which such cash is deposited or such funds are received for deposit." 12 U.S.C. § 4002(a)(1)(B). Similarly, section 229.10(b)(1) of the regulations states that banks must make funds deposited by electronic means, like those alleged here (dkt. 32 at 13, ¶¶70–71), "available for withdrawal not later than the business day after the banking day on which the bank received the electronic payment." 12 C.F.R. § 229.10(b)(1). Section 4010(a) provides that "any depository institution which fails to comply with any requirement imposed

6

under this chapter or any regulation prescribed under this chapter with respect to any person other than another depository institution is liable to such person" for specified damages. 12 U.S.C. § 4010(a). But DriverDo is not seeking damages for this claim.

Count I identifies deposits that were made on July 20 and 22, 2020 (dkt. 32 at 12, ¶67), which is after Chase restricted the accounts on July 15, 2020 (dkt. 32 at 4, ¶19), that were not made available the next day, in violation of the EFAA. Chase argues, however, that it had a right to not make those funds available under several agreements with DriverDo and the EFAA does not apply to electronically deposited funds. (Dkt. 35 at 9.) DriverDo argues that the EFAA applies and that Chase violated not only the requirement that it make deposited funds available the business day after deposit but also a written notice requirement if it intended to extend that time to make those funds available. (Dkt. 37 at 3–4.)

The EFAA plainly regulates deposits made by electronic means and it requires that those funds be available by the next business day. *See* 12 U.S.C. § 4002(a)(1)(B); 12 C.F.R. § 229.10(b)(1). An EFAA violation is stated here: Chase did not make deposits made on July 20 and 22, 2020, available to DriverDo by the next business day. (Dkt. 32 at 12, ¶¶67.) DriverDo's claims about a notice violation seem irrelevant considering this alleged availability violation. The notice requirement applies in specific situations in which the bank seeks an exception to making funds available by the prescribed time, and DriverDo alleged that none of the exceptions applied and no notice was ever given. Whatever the independent relevance of notice, the core violation based on the unavailability of the July 20 and 22 deposits is sufficient, even though Chase restricted and closed DriverDo's accounts a few days earlier.

Numerous courts have held, however, that placing a hold on or freezing an account after deposits have been made does not violate the EFAA. *See Frost Nat'l Bank* v. *Parker*, No. 95-

2150, 1999 WL 33438078, at *14 (C.D. Ill. Feb. 26, 1999), *aff'd sub nom*. 241 F.3d 862 (7th Cir. 2001); *Little Donkey Enters. Wash., Inc.* v. *U.S. Bancorp*, 136 F. App'x. 91, 92 (9th Cir. 2005); *Vanco* v. *J.P. Morgan Chase Bank, N.A.*, No. 16 C 3682, 2017 WL 1364757, at *5 (D. Md. Apr. 14, 2017); *Nix* v. *NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587 (D. Md. 2016); *Anderson* v. *USAA Fed. Sav. Bank*, No. 13 C 1316, 2013 WL 4776728, at *2 (D.S.C. Sept. 4, 2013). But Chase has not argued that the same is true for a situation in which a frozen account still receives deposits or that it is a distinction without a difference. Although Chase generally argues that it had a contractual right to freeze or otherwise restrict DriverDo's accounts (dkt. 35-3 at 41), that argument is predicated on agreements that it supplied with its motion to dismiss that are different from the one attached to the amended complaint. DriverDo has not unequivocally conceded that they govern here. (Dkt. 37 at 9.)[2] Thus, Chase has only injected a factual dispute as to the proper governing agreement, and, as explained further below, that is not properly resolved on this motion. Moreover, Chase does not explain the interplay between EFAA obligations and a bank's contract with its customers when they appear to be at odds.

Last, Chase argues that it cannot be liable as a matter of law for any misrepresentations about the availability of account funds. (Dkt. 35 at 10.) But the EFAA claim is based on availability, and thus misrepresentation has nothing to do with it. To the extent that Chase is suggesting that its representatives incorrectly advised DriverDo that its July 20 and 22 deposits were unavailable, the argument is underdeveloped and requires a factual basis not apparent in the amended complaint. Further confusing the issue, DriverDo offers a non-responsive argument that

---

[2] At oral argument, counsel for DriverDo vaguely accepted that the agreements that Chase offered were controlling. Nevertheless, there remained uncertainty as to which agreement governed at the time of the alleged violations and how the various agreements affect the merits of the breach of contract claim. Given the uncertainty, this court will decide the motion based on what was alleged in the amended complaint and the parties' written submissions.

8

its state-law claims are not preempted by the EFAA. (Dkt. 37 at 5–6.) Preemption has nothing to do with the merits of the EFAA claim or Chase's motion.

Although DriverDo's complaint states a claim for an EFAA violation, the requested declaratory relief is not effectual relief for this claim. As the court explained in its rule to show cause order (dkt. 44), DriverDo's request for only declaratory relief for the EFAA claim is puzzling, considering it seeks damages for the state-law claims. Also unclear is what declaratory relief accomplishes, because the purpose of the Declaratory Judgment Act "is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc.* v. *Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969) (citation and quotation omitted). But here, the EFAA violation is alleged to have already occurred, so declaratory relief would not serve any purpose.

In Chase's response to the court's rule to show cause, it argued (dkt. 45 at 3–5) that DriverDo could still be awarded damages because a specific request is unnecessary and, regardless, DriverDo's request for "other, further, or different relief as the Court may find equitable and just" (dkt. 32 at 14) was independently sufficient to award damages. DriverDo's actions in this litigation, however, are inconsistent with a desire to seek damages for this claim. It has not referenced the EFAA civil damages provision: it first filed this action in state court and sought no damages for the EFAA claim; its amended complaint in federal court removed injunctive relief but did not add damages; and its response to the motion to dismiss argued only that declaratory relief was proper.

District courts have discretion whether to grant declaratory relief. *See* 28 U.S.C. § 2201; *Brillhart* v. *Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Exercising that discretion, the

9

court dismisses the EFAA claim without prejudice because, although not necessarily moot, it does not further the purpose of such relief. DriverDo is granted leave to replead this claim as one for damages.

II.     **The breach of contract claim will not be dismissed based on an evidentiary dispute.**

As mentioned above, Chase moved to dismiss the breach of contract claim in count II by relying on several deposit account agreements, different from the one attached to the amended complaint, which it claims govern the parties' banking relationship, along with several witness declarations and other extrinsic evidence. (Dkt. 35 at 6–8.) Chase provides no explanation or argument that the evidence on which it relies is the type that can be properly considered on a motion under Rule 12(b)(6) by judicial notice or incorporation by reference. *See Amin Ijbara Equity Corp.*, 860 F.3d at 493 n.2. Rather, its reliance on new evidence merely disputes the allegations. Chase offers no argument to dismiss the breach of contract claim as it is alleged. Thus, the breach of contract claim will not be dismissed based on evidence outside of the amended complaint. Count II survives.

III.    **The tort claims in counts III, IV, and V are barred under *Moorman*.**

DriverDo also raises tort claims for negligence (count III),[3] negligent misrepresentation (count IV), and conversion (count V). (Dkt. 32 at 16-21.) Chase moves to dismiss these counts under the Illinois economic loss rule announced in *Moorman Manufacturing Co.* v. *National Tank Co.*, 435 N.E.2d 443 (Ill. 1982), among other bases. (Dkt. 35.) Under *Moorman*, a plaintiff may not recover for solely economic loss in tort where the loss arises from the failure to perform contract obligations. *Id*. at 453. There are several exceptions to this rule: (1) personal injury or

---

[3] DriverDo labeled this as a claim for negligence and gross negligence. Illinois law does not recognize gross negligence as an independent ground for recovery, and thus count III is construed as a negligence claim. *Merit Ins. Co.* v. *Colao*, 603 F.2d 654, 659 (7th Cir. 1979).

10

property damage from a sudden or dangerous occurrence: (2) intentional fraud; and (3) negligent misrepresentation by a defendant that is in the business of supplying information for the guidance of others in their business transactions. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997).

DriverDo's tort claims run headlong into *Moorman*. All duties on which DriverDo bases its tort claims mirror contract provisions that are alleged to have been breached, relating to access to funds, termination, and providing notice for certain actions. (*Compare* dkt. 32 at 14–15, ¶¶78–81 (contract provisions alleged to have been breached) *with id.* at 17, ¶97–99 (duties alleged to have been breached)); *see also Cont'l Cas. Co.* v. *Am. Nat'l Bank & Tr. Co. of Chi.*, 768 N.E.2d 352, 357 (Ill. App. Ct. 2002) ("relationship between a bank and its depositor is contractual in nature"). Accordingly, *Mutual Service Casualty Insurance Co.* v. *Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001), cited by DriverDo to argue that an extra-contractual duty exists, is inapposite because that case involved a situation where no contract provision governed the duty the bank was alleged to have breached. DriverDo attempts to get around this by alleging breaches of other duties, *e.g.*, to investigate, communicate, and request information. (Dkt. 32 at 17, ¶¶95–98.) But those alleged breaches caused no damage independent of or different from the lack of access to funds, termination of the account, or lack of notice that is alleged under the breach of contract claim.

No exception to *Moorman* applies. First, there is no personal injury or property damage alleged. Although DriverDo claims to have suffered "via Haque and Rizzo" non-pecuniary harms, such as "great embarrassment, humiliation, emotional and mental pain and anguish" (dkt. 32 at 18, ¶103), DriverDo is a limited liability company and cannot suffer those harms, let alone recover damages for individuals who are not parties to this action. *See Brown & Williamson*

11

*Tobacco Corp.* v. *Jacobson*, 644 F. Supp. 1240, 1262 (N.D. Ill. 1986), *aff'd in part, rev'd in part*, 827 F.2d 1119 (7th Cir. 1987) ("A corporation is incapable of mental suffering").

Second, there is no intentional misrepresentation alleged. At most, DriverDo claims under its breach of contract and negligence claims that Chase "and/or" its employees were "malicious, intentional, willful, [and] reckless[.]" (Dkt. 32 at 16, 17, ¶¶92, 99.) But these are conclusions, lacking any well-pleaded factual basis supporting them.

Third, there is no allegation of actionable negligent misrepresentation or that Chase was in the business of supplying information for the guidance of others in their business transactions. Negligent misrepresentation is not alleged because that requires, among other elements, an intention by Chase to induce DriverDo to act and damage to DriverDo resulting from its reliance on Chase's false statement. *See First Midwest Bank, N.A.* v. *Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006). DriverDo pleaded no facts supporting either element.

Nor is Chase alleged to have been in the business of providing information for the guidance of others in their business transactions. Chase provided DriverDo with commercial banking services and deposit accounts for DriverDo's business funds. (Dkt. 32 at 2, ¶¶6, 9–10). The nature of the alleged relationship is not one in which DriverDo retained Chase to provide it with information. Rather, any information that Chase supplied DriverDo was DriverDo's own account information and merely ancillary to the account services. *See Fireman's Fund Ins. Co.* v. *SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997).

For these reasons, the tort claims in counts III–V are dismissed with prejudice.

Lastly, that DriverDo is in possession of the funds that were in its Chase accounts does not moot any claim. (Dkt. 36 at 7; *see also* dkt. 29.) Although DriverDo acknowledges the argument (dkt. 37 at 2–3), it does not confront it. Apart from the possibility that DriverDo could

amend its EFAA claim to seek monetary relief, Chase overlooks the damages sought other than the return of money. For example, the breach of contract claim in part seeks "actual and consequential damages" (dkt. 32 at 16), including taking on a high interest loan, loss of revenue, costs for setting up a new bank account, interruption of its business, legal fees, and other costs (*id.* at 10–11, 16, ¶¶57–59, 90.) Therefore, the return of the funds is no basis to dismiss the action.

## CONCLUSION AND ORDER

Chase's motion to dismiss (dkt. 34) is granted in part and denied in part. DriverDo has until August 17, 2021, to replead count I.

Date: August 9, 2021

_____
U.S. District Judge Joan H. Lefkow