IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association, <br><br> Defendant. | No. 1:20-cv-05046 <br><br> The Honorable Judge Joan Humphrey Lefkow <br><br> Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF, DRIVERDO LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHASE BANK'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, DRIVERDO LLC, a Kansas limited liability company d/b/a DRAIVER ("DriverDo"), by and through its attorneys, ARONBERG GOLDGEHN DAVIS & GARMISA, submit its Memorandum of Law in Opposition to Defendant's, JPMORGAN CHASE BANK, N.A. d/b/a Chase Bank, a national banking association ("Chase"), Motion for Summary Judgment filed on November 16, 2021 [Dkt. 61] ("Chase's Motion"), and in support hereof, states as follows:

**Introduction**

To this day, Chase continues to stand behind its contention that it has no obligation to provide a reason as why it unilaterally restricted DriverDo's business accounts, which caused DriverDo tremendous loss of business, time and flow of revenue. After repeated requests to Chase to release desperately needed funds in order to operate and keep its business viable, DriverDo, on August 14, 2020, was forced to file its initial four-count Verified Complaint for Declaratory Judgment, Injunctive and Other Relief in the Circuit Court of Cook County, Chancery Division (the "State Court Complaint"). DriverDo had no other way of making Chase unleash its hold on DriverDo's much needed funds.

On August 30, 2021, DriverDo filed a two-count Third Amended Complaint ("Complaint") [Dkt. No. 52] ("TAC") alleging a violation of the Expedited Funds Availability Act ("EFAA") in Count I, and for breach of the account terms in Count II for failing to make the funds in the DriverDo Chase Accounts available as required by law and failing to handle the closure and restriction of the funds in the DriverDo Chase Accounts with ordinary care.

Chase does not dispute, nor is there any question, that Chase held DriverDo's funds hostage without any actual basis to do so and that the funds in the DriverDo accounts were not made available or returned to DriverDo for almost thirty (30) days in violation of the EFAA and the account terms. Chase maintains that the only reason the DriverDo accounts were restricted was because Chase unilaterally chose to close the accounts without explanation. [Dkt. No. 63, para. 29 and Dkt. No. 63-1, page 263]. As a result, Chase's Motion alleges that there is no genuine issue of material fact that Chase's conduct did not breach their Deposit Account Agreement ("DAA") or violate the EFAA. [Dkt. 61]. In support of its Motion, Chase filed a Memorandum of Law [Dkt. No. 62] ("Memorandum") and Statement of Undisputed Material facts [Dkt. 63] ("SMF") with Appendix of Exhibits which was amended on December 30, 2021 ("Appendix") [Dkt. 72]. Specifically, Chase argues that there is no issue of fact as to Chase's unconditional right to hold and freeze funds without explanation or proper notice– contrary to the terms of the account agreement that governs the relationship between the parties and contrary to the requirements of the EFAA and that there is no issue of fact as to which account agreement governs.

Even though Chase may be under the impression that it can restrict or close the account on a whim, its own account agreement (or the account agreement Chase argues is in effect here) only allows restrictions in certain circumstances, none of which exist here. As set forth below, Defendant's Motion for Summary Judgment must be denied because there exists a genuine issue

of fact as to: (1) which account agreement governs the relationship of the parties; and (2) as to Chase's conduct in handling the closing and restriction of DriverDo's accounts.

## Summary of Facts

DriverDo is a startup technology services company providing remote transportation management services to the auto industry. [TAC Dkt. 52, ¶1, Declaration of Mashhur Zarif Haque, ¶5]. DriverDo is an on-demand business providing, among other things, a vehicle delivery platform to dealerships and fleets, moving vehicles across the country, managing drivers, and providing vehicle services to its thousands of customers.

In June 2019, Daniel Rizzo ("Rizzo"), met with a commercial banker, Bill Vordouniotis, at the Chase main branch, 10 South Dearborn Street, Chicago, Illinois, 60603 and opened two business bank accounts at Chase. [TAC, Dkt. 52, ¶6, Declaration of Daniel Rizzo, ¶¶6, 9]. The Declaration of Mashhur Zarif Haque and the Declaration of Daniel Rizzo are collectively, "the Haque Declaration and Rizzo Declaration" and are attached as Exhibits 1 and 2, respectively. The two bank accounts, "Account #2126" and "Account #2159" are collectively referred to as the "DriverDo Chase Accounts". The DriverDo Chase Accounts were used for the operation of DriverDo's business, including, without limitations, the receipt of business revenues, payment of business expenses, payroll and other costs of business. [TAC, ¶9 and Haque Declaration and Rizzo Declaration, ¶7].

Rizzo and Haque are authorized signors and had full access to the DriverDo Chase Accounts. TAC, ¶7, Haque Declaration, ¶9, Rizzo Declaration, ¶9]. At the time of opening of the DriverDo Chase Accounts, neither Haque nor Rizzo received a copy of a deposit account agreement. [Haque Declaration, ¶10, and Rizzo Declaration, ¶10]. Subsequent to the opening of the DriverDo Chase Accounts, DriverDo was assigned a Chase relationship manager, Hiram Velez

3

("Velez"). [TAC, ¶8, Haque Declaration, ¶11, and Rizzo Declaration, ¶11]. The DriverDo Chase Accounts were in operation for a year without any issue.

On July 17, 2020, Rizzo, tried to access the DriverDo Chase Accounts but the accounts were both restricted. [TAC, ¶¶16-17, Haque Declaration, ¶12, and Rizzo Declaration, ¶12]. DriverDo immediately requested that Chase release the funds in the DriverDo Chase Accounts. However, as a result of the restricted status, Chase's representatives refused and advised that DriverDo would no longer be able to withdraw its funds. [Haque Declaration, ¶13, and Rizzo Declaration, ¶14]. On July 20, 2020, after multiple requests for a copy of the account agreement, Velez emailed to Rizzo and Haque the "Additional Services Agreement" which is attached as Group Exhibit 1, pages 1 through 19 of the TAC. [Haque Declaration, ¶14]. On July 31, 2020, Haque spoke to Velez to inquire as to the full account agreement and Haque was directed to obtain the actual account agreement from Chase's website. [Haque Declaration, ¶15]. DriverDo's employee, Kevin Burke, retrieved the account agreement titled Account Terms and Availability Policy attached as the first eight (8) pages to Group Exhibit 1 to TAC from Chase's website: https://www.jpmorgan.com/pdfdoc/customerservices/global_account_terms.pdf. [Declaration of Kevin Burke attached hereto as Exhibit 3 ("Burke Declaration")].

During the time Chase blocked DriverDo's Chase accounts, the Covid-19 pandemic and its effect forced DriverDo to obtain an Economic Injury Disaster Loan ("EIDL") through the Small Business Administration ("SBA") in the amount of $500,000.00. [TAC, ¶41]. On July 27, 2020, DriverDo received confirmation through the SBA's online portal that the EIDL funds from the SBA had been disbursed into Account#2126, without any issue. *See* SBA screen shots from online portal attached as Group Exhibit 3 to the TAC. [TAC, ¶42.]. On July 30, 2020, Haque contacted the customer service line at Chase to inquire as to the status of the EIDL funds and was told that

4

Chase had received the EIDL funds but that the funds would not be posted until the following day. [TAC, ¶43]. On the same day, Haque received confirmation from Velez that Chase had received the EIDL funds but that the funds would not be posted until the following day. [TAC, ¶43]. Despite repeated communications with Chase, DriverDo never received the SBA Funds. [Haque Declaration, ¶40].

On August 10, 2020, DriverDo received a bank check from Chase dated July 31, 2020 in the amount of $104,420.78 which was only a portion of the funds in the DriverDo Chase Accounts ("July 31 Released Funds"). [Haque Declaration, ¶27]. On August 10, 2020, DriverDo received the bank statements for the DriverDo Chase Accounts which sets forth the activity from July 1, 2020 through July 31, 2020. [TAC, ¶51]. Both statements for the DriverDo Chase Accounts fail to reflect the SBA Funds and also fail to show the July 31 Released Funds. [TAC, ¶52]. In addition, the bank statement for Account#2159 shows an ending account balance as of July 31, 2020 in the amount of $159,314.88 and shows that the last deposit was made on July 20, 2020 and the last withdrawal was made on July 17, 2020. [TAC, ¶53]. The bank statement for Account #2126 shows an ending account balance as of July 31, 2020 in the amount of $41,440.90 and shows the last deposit was made on July 22, 2020 and the last withdrawal was made on July 20, 2020. [TAC, ¶54]. From July 17, 2020 through at least July 31, 2020 various transactions for deposits and withdrawals appeared to have been accepted, refused, rejected or returned and despite numerous requests via email, text messages and phone calls with Chase, to date, DriverDo has not been able to verify or determine all the transactions. [Haque Declaration, ¶37].

On August 15, 2020, DriverDo received two bank checks dated August 13, 2020 from Chase in the amount of $41,440.90 and $54,894.10, which presumably was the total amount remaining in the DriverDo Chase Accounts. [Haque Declaration, ¶38]. As a result of the restricted

access to DriverDo Chase Accounts, DriverDo never received the much needed EIDL funds that the SBA sent to Chase nor were they able to access any of the funds in the DriverDo Chase Accounts for almost 30 days. [Haque Declaration, ¶40]. As a result of the restricted access to DriverDo Chase Accounts, DriverDo was unable to make payments for payroll and expenses. [Haque Declaration, ¶41]. As a result of the restricted access to DriverDo Chase Accounts, DriverDo's members were forced to pay a combined $149,000 of their own funds to cover business operations, obtain an emergency high interest loan on July 23, 2020, to continue operations of DriverDo's business, seek a new banking relationship with another bank and other costs and expenses that have continued to accrue. [Haque Declaration, ¶42].

From July 17, 2020 through August 15, 2020, Haque and Rizzo contacted Chase almost every day, either via the customer service line at Chase, Chase's Executive Office and/or Velez, regarding the availability of the SBA Funds and the funds in the DriverDo Chase Accounts and on each occasion was told that the DriverDo Chase Accounts were on restricted status, that the accounts were closed but no further information was provided as to why they continued to be on restricted status and when any of the funds would be made available. [TAC, ¶¶ 47, 49].

## Legal Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009), *citing* Fed. R. Civ. P. 56(c). A moving party who bears the burden of proof at trial can only prevail on summary judgment by proving each element of its case with evidence sufficiently compelling that no reasonable jury could return a verdict for the non-movant. *Mitchell v. Baker*, 2015 WL 5076938, at *2 (S.D. Ill. Aug. 27, 2015), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed

verdict if not controverted at trial."). *See also McKinney,* 954 F. Supp. 2d at 803 ("where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party"). The party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 322.

## Argument

**I.      There is a genuine issue of fact as to which account agreement governs**

DriverDo does not dispute that a signature card was signed for the DriverDo Chase Accounts but it does dispute that the DAA, as defined in Chase's Motion, and the DAA attached to the SMF and Appendix govern here. Basically, because the DAA was not part of the signature card, Chase effectively argues that their DAA was incorporated by reference into the signature card that formed the contractual relationship of the parties.

To determine whether a contract incorporates by reference another document, the touchstone is the parties' intent. *Kogan v. Scandinavian Airlines Sys.*, 253 F. Supp. 3d 1022, 1025 (N.D. Ill. 2017) *citing 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract."); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) ("The contract must show an intent to incorporate the other document and make it a part of the contract itself.").

The signature cards state, in relevant part:

> "The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services, if applicable, and agree to be bound by the terms and conditions contained therein as amended from time to time."

[Appendix, Dkt. 72, page 258, 259].

The language in the signature cards do not clearly incorporate Chase's DAA. In fact, the language in the signature card references multiple agreements some of which may be applicable. Although there is reference to an agreement that the parties may be bound by, it is not clear from the signature cards nor from Chase's own declarations, what agreement(s) governed or that their DAA was the only agreement that would govern the relationship of the parties.

Chase submits the Declaration of Laura K. Cleveland, which states that it is Chase's policy and procedure to make a copy of the effective DAA available to every customer who holds a deposit account with Chase both in branches and on the chase.com website. [Appendix Dkt. 72, pages 95-97]. However, nowhere in the Declaration does it state that it is Chase's policy or procedure to provide a copy of the effective DAA at the time a signature card is executed or that it did in this circumstance when the DriverDo Chase Accounts were opened. The same with the Declaration of David Fasshauer, which simply provides a copy of the signature cards but does not state they any account agreement was provided to DriverDo. [Appendix, Dkt. 72, pages 255-256]. The fact is that neither can attest to what was provided to DriverDo because neither was present when the signature cards were executed. The declarants are unable to attest to the fact that anything at all was given to DriverDo's employees because nothing was actually given to DriverDo's employees at the time the DriverDo Chase Accounts were opened.

As set forth in the DriverDo's Rizzo Declaration, Chase's Representative never provided DriverDo with a copy of Chase's account agreement referenced in the Signature Cards at the time the DriverDo Accounts were opened nor was he directed to go to Chase's website. [Rizzo Declaration, ¶9]. As set forth in the Haque Declaration, only after repeated and frustrating requests by DriverDo for a copy of the governing account agreement to their Chase Representative in July

8

2020, did the Chase Representative sent them a small portion of it and then told DriverDo to go to Chase's website for the remaining account agreement, which it did. [Haque Declaration, ¶15]. According to Haque, other than the account agreement obtained at the direction of the Chase Representative from the website, no other account agreement was provided to DriverDo. [Haque Declaration, ¶¶ 10, 15]. At the time the Chase Representative directed DriverDo to the website, there were account agreements, other than the DAA, available to Chase's customers, which is exactly how DriverDo obtained the account agreement they relied on. Chase has not undisputedly proven that their account agreement governs. Chase fails to demonstrate and does not even dispute that the account agreement relied on by DriverDo was available on their website at the time. Based on the foregoing, there remains a genuine issue of material fact as to which account agreement governs that should not be decided on summary judgment.

## II.    There is genuine issue of fact as to Chase's conduct under the account terms

Illinois Courts have long recognized that implicit in every contract is a common law duty of the bank to use ordinary care in disbursing a depositor's funds. *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill.Ap.3d 686, 693, 263 Ill.Dec. 592, 768 N.E.2d 352, 358 (2002) (citing *National Bank of Monticello v. Quinn*, 126 Ill. 2d 129, 134, 533 N.E.2d 846 (1988)); see also *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001)(the Court recognizing a common law duty of care the bank owes to its depositors when the account agreement does not expressly provide for how a check made payable to its own order should be handled).

DriverDo alleges that Chase breached the Account Terms by wrongfully closing and restricting access to the DriverDo Chase accounts. [See TAC, ¶84]. Chase asserts that on July 17, 2020, it decided to close the DriverDo Chase Accounts after review of the accounts. [See

9

Appendix, Dkt. 72, page 95, ¶¶6, 7]. Only after making this decision, did Chase restrict the DriverDo Chase Accounts [Id, ¶¶ 8,9].

From July 17, 2020 through August 12, 2020, DriverDo continuously inquired with Chase as to when the funds in the DriverDo Chase Accounts would be made available. [TAC, ¶¶47, 49, See also generally, Haque Declaration and Rizzo Declaration]. More than two weeks later, DriverDo received only a portion of the funds in the amount of $104,420.78 on August 8, 2020 and the remaining funds of $96,335.00 were received on August 15, 2022. [Declaration of Zarif Haque, ¶¶27, 38]. As a result, DriverDo was without access to over $200,000.00 for almost 30 days despite the fact that the bank statements provided by Chase for the month of July 2020 and August 2020 reflect incorrect dates for the funds being returned to DriverDo.

More importantly, nowhere in the Account Terms does it allow Chase to close and restrict the DriverDo Chase Accounts for any reason, without notice and for an unreasonable amount of time. In fact, Chase was required to make the funds in the DriverDo Chase Accounts available through its own Availability Policy. [See, TAC, Exhibit A]. Further, DriverDo maintains that pursuant to the Account Terms, Chase was required to provide DriverDo with 30 day notice before closing the accounts. TAC, ¶12.

Even the DAA that Chase maintains governs the parties' relationship does not allow Chase to have a blanket and unconditional authority to close and then restrict the DriverDo Chase Accounts. Contrary to Chase's assertions, Chase had an obligation to process the closing of the DriverDo Chase Accounts with ordinary care and Chase simply failed to do just that.

The DAA that Chase relies on to support its conduct here does not expressly define how Chase is required to handle the closure and then restriction of an account when the only basis to restrict is Chase's decision to close the account. Chase cites to the "Closing Your Account"

paragraph in the DAA and the "Restricting Your Account; Blocking or Delaying Transactions" paragraph to support its position that Chase can close the DriverDo Chase Accounts at any time, without any reason or notice. And that it also had the ability to restrict the account for any reason, at any time, without any notice. However, as set forth below, that is not exactly what the DAA states.

The Closing Your Account paragraph in full states as follows:

*VIII. Closing Your Account*

Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior notice. We are not required to close your account at your request if you have pending transactions, the account is overdrawn or your account is subject to legal process (such as a garnishment, attachment, execution, levy or similar order). In those cases, we will restrict your account against all future withdrawals other than under legal process until pending transactions are paid or returned, the balance is no longer negative, and any legal restriction has been released. After we restrict your account in preparation for closing, we will not pay any additional interest on the account. We may automatically close your account if the balance is $0 or negative. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks, but we may reopen your account if we receive a deposit. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third party reporting agencies of accounts closed for misuse, such as overdrafts.

[Appendix, Dkt. 72, page 220]

This paragraph clearly does not allow Chase to restrict an account when it's Chase that makes the decision to close the account. In fact, this paragraph allows an account to be restricted only under circumstances in which the customer chooses to close the account. In addition, although no prior notice is required, this paragraph is silent as to when the funds in the accounts would be returned to the customer after the account is closed by Chase.

11

The "Restricting Your Account; Blocking or Delaying Transactions" paragraph states in full:

**C. Restricting Your Account; Blocking or Delaying Transactions**

There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:

• Your account is involved in any legal or administrative proceeding;
• We receive conflicting information or instructions regarding account ownership, control or activity;
• We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have
   authorized the transaction(s);
• We suspect that any transaction may involve illegal activity or may be fraudulent;
• We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including
    federal asset control and sanction rules and anti-money laundering rules, or with our policies adopted
   to assure that we comply with those laws, rules or regulations; or
• We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.

We can assign and transfer your account information and documentation to a replacement account number at our discretion. We may make this assignment when your account is reported compromised by you or any signer. If we issue you a replacement account number, this Deposit Account Agreement governing you and your account will continue to apply, without interruption, as if you retained the discontinued account number.

We will have no liability for any action we take under this section and we may take such action without advanced notice.

[Appendix, Dkt. 72, page 221]

DriverDo contends that this paragraph does not apply to the facts of this case given the language in the "Closing Your Account" paragraph. Nevertheless, the paragraph above does not allow Chase to unconditionally restrict an account and without any notice. Although this

paragraph does state that Chase "may decline or prevent any and all transactions to or from your account", Chase did not restrict any particular "transaction" but simply blocked DriverDo from accessing all of its funds and failed to return DriverDo's funds for almost 30 days. As Chase maintains in its Motion, Chase simply chose to close DriverDo's accounts and there was no "transaction" that triggered the restriction of the funds in the DriverDo Chase Accounts.

In addition, the above paragraph does not unequivocally state that Chase can restrict your account for any reason and for however long Chase wants. In fact, this paragraph sets forth very specific reasons that would allow Chase to restrict an account. None of which has been set forth by Chase. And although this paragraph states that Chase can restrict an account without advance notice for the reasons stated therein, there is nothing that sets forth Chase's obligations once the customer is aware of the restriction. If Chase wanted the ability to restrict an account for any reason and for any amount of time, they certainly could have stated so in this paragraph, which they failed to do. DriverDo maintains that for almost 30 days, Chase kept DriverDo in the dark as to what was happening with the DriverDo Chase Accounts and when the funds would be made available.

Because the Account Terms and the DAA do not expressly allow Chase to restrict the DriverDo Chase Accounts for any reason and for however long, Chase was then obligated to handle the closing and restricting of the DriverDo Chase Accounts with ordinary care.

DriverDo had no access to over $200,000 of its own funds for almost 30 days simply because Chase unilaterally chose to close the accounts. Every time DriverDo contacted Chase, they were given different information as to why the accounts were closed and/or restricted, how the funds coming in and out would be handled and when the funds would ultimately be made available. Chase's handling of the DriverDo Chase Accounts and conduct related thereto is not and cannot be deemed reasonable or having been handled with ordinary care under the facts of this

13

case. DriverDo at all times did nothing wrong and took every action necessary and yet, still, could not access its own funds for almost 30 days. Based on the foregoing, there is genuine issue of material fact as to Chase's conduct in handling the closure and restriction of the DriverDo Chase Accounts that would preclude the entry of summary judgment in favor of Chase.

### III. There is no genuine issue of material fact that Chase violated the EFFA

DriverDo alleges that Chase violated the EFAA by failing to make the funds in the DriverDo Chase Accounts available pursuant to the Availability Policy under 12 U.S.C. §4001 et seq and 12 C.F.R. §229 et seq. and to notify DriverDo as to when the funds would be made available. [See TAC, ¶¶ 62-65]. Specifically, Chase failed to make funds deposited into the DriverDo Chase Accounts, even after Chase had wrongfully restricted the funds on June 17, 2020, but at the same time still making certain funds available and failed to notify DriverDo as to when the funds would be made available. [TAC, Group Exhibit 4, DriverDo Chase Account Statements].

Chase does not dispute that it failed to make the funds available pursuant to the EFAA or to notify DriverDo pursuant to the EFAA. Rather, Chase attempts to argue that there is no EFAA violation because under the DAA, Chase is allowed to restrict access to funds that would otherwise have been available at any time, and that provision is not dependent on how long the funds have been on deposit. (SMF ¶¶ 24-25). Specifically, Chase cites to 12 CFR §229.19(c)(4) for the proposition that as long as Chase can limit funds without any specific amount of time, there could be no EFAA violation. However, the cases cited by Chase all deal with funds already on deposit rather then being restricted for a valid reason. And none of the cases cited by Chase specifically relate to 12 CFR §229.19(c)(4) or specifically address a violation of the EFAA when the accounts are wrongfully restricted. Chase did not merely place a hold or freeze DriverDo's accounts due to

a valid restriction reason as in the cases cited by Chase. Chase blocked DriverDo's access to its funds for almost 30 days simply because it chose to close the accounts.

In addition, as set forth above, DriverDo maintains that the Account Terms govern the relationship of the parties and not the DAA. The Account Terms do not allow Chase to restrict DriverDo's funds for any reason or for however long Chase wants. As set forth above, the DAA also does not allow Chase to restrict access to DriverDo's funds for any reason and for however long Chase wants. Accordingly, there is no issue of material fact that Chase did violate the EFAA.

### IV. Damages under EFAA and account terms

As set forth above, because the Account Terms and the DAA do not expressly allow Chase to restrict the DriverDo Chase Accounts for any reason and for however long, Chase's attempt to thwart responsibility and DriverDo's damages fail. DriverDo is entitled to recover its damages under the EFAA and without limit pursuant to the Account Terms. Even under Chase's DAA, DriverDo's damages should not be limited. The language that Chase attempts to apply to limit damages relate to the "Restricting Your Account; Blocking or Delaying Transactions" paragraph discussed above. As that paragraph does not apply to Chase's conduct here (only the "Closing Your Account" paragraph would be applicable under Chase's DAA), DriverDo's damages are not and should not be limited. Chase's failure to make DriverDo's Chase Accounts available to DriverDo for almost 30 days, Chase's failure to notify DriverDo as to why the funds would not be available, Chase's failure to make the SBA Funds available, Chase's failure to notify DriverDo as to the status of the SBA Funds, and Chase's failure to allow DriverDo access to its own business capital resulted in actual monetary loss to DriverDo that continues to damage DriverDo today. Most notably, while its funds were frozen, DriverDo was forced to obtain an emergency, high interest loan to cover the loss of revenue. [TAC, ¶59 and Haque Declaration, ¶42]. In order to keep

DriverDo viable, DriverDo's own members were forced to lend funds to cover the costs of operation, a combined amount of approximately $149,000.00 from their own personal funds [Id.]. As the weeks progressed while Chase held DriverDo's funds hostage, DriverDo was not able to make payments for payroll and expenses. [Haque Declaration, ¶41].

As a result of Chase holding DriverDo's funds without notification or reason for such a lengthy period of time, Chase interrupted the acceleration and development of DriverDo's business causing its members emotional and mental anguish that drives, to this day, their need for understanding as to why the accounts were closed to begin with and restricted for so long.

## Conclusion

For the foregoing reasons, DriverDo respectfully seeks an order that denying Defendant's Motion for Summary Judgment because there exists a genuine issue of fact as to: (1) which account agreement governs the relationship of the parties; and (2) as to Defendant's conduct in handling the closing and restriction of DriverDo's accounts.

> Respectfully submitted,
> DRIVERDO LLC, a Kansas limited liability
> company d/b/a DRAIVER, Plaintiff
>
> By: /s/ Sandra A. Aguilera
>       One of Its attorneys

Sandra A. Aguilera #6286182
Vanessa E. Seiler #6270105
**ARONBERG GOLDGEHN DAVIS & GARMISA**
330 N. Wabash Avenue, Suite 1700
Chicago, Illinois 60611
Phone: (312) 755-3165
saguilera@agdglaw.com
vseiler@agdglaw.com)

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of **PLAINTIFF, DRIVERDO LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHASE BANK'S MOTION FOR SUMMARY JUDGMENT,** was served upon on all counsel of record electronically through CM/ECF on March 29, 2022.

/s/ *Sandra A. Aguilera*
*One of the Attorneys for Plaintiff,*
*DRIVERDO LLC, a Kansas limited liability*
*company d/b/a DRAIVER*