IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRIVERDO LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 20 C 5046 ) |
| JP MORGAN CHASE BANK, N.A., | ) Judge Joan H. Lefkow ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

DriverDo LLC's third amended complaint alleges that JP Morgan Chase Bank, N.A., violated the Expedited Funds Availability Act (EFA Act), 12 U.S.C. §§ 4001 *et seq.*, and breached certain agreements. Chase now moves for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

**BACKGROUND**

**I.      Local Rule 56.1 standards**

DriverDo's failure to adhere to summary judgment procedures requires a preliminary word. When considering whether a party is entitled to summary judgment, the court relies on the undisputed material facts set forth by the parties. Local Rule 56.1 provides the procedure for presenting facts that are central to supporting or opposing summary judgment. The court is "entitled to … strict compliance with" Local Rule 56.1, *Stevo* v. *Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011), because "[c]ompliance … ensures the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination," *Curtis* v. *Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). The court may apply local rules strictly or overlook violations. *Stevo*, 662 F.3d at 886–87.

DriverDo has not complied at all with Local Rule 56.1. DriverDo does not properly dispute any of Chase's factual assertions, nor does it submit additional factual assertions in numbered paragraph form. *See* LR 56.1(b)(3). Instead, DriverDo's response brief includes a "Summary of Facts" section that cites to the third amended complaint and documents attached to it, along with the declarations of Mashhur Zarif Haque and Daniel Rizzo, two DriverDo officers, and Kevin Burke, a DriverDo employee; it does not cite Chase's asserted facts. (Dkt. 80.) Chase highlighted these deficiencies in its reply brief, yet DriverDo did not seek leave to amend its response or otherwise explain its lack of compliance.

Factual assertions to which a party does not properly respond may be deemed admitted, and improperly presented factual assertions may be ignored. *See* LR 56.1(e)(3); *Cracco* v. *Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Reyes* v. *Menard, Inc.*, No. 21 C 359, 2022 WL 2757666, at *1 (N.D. Ill. July 14, 2022). The following facts are based on Chase's asserted facts insofar as they are factual and not legal conclusion, and, for the sake of context, some factual material contained in the declarations from DriverDo is included.

## II. Summary judgment facts

### A. Chase's deposit account agreements

To open a business account at Chase, the individual opening the account signs a Business Signature Card. (DSOF ¶¶4, 5, 6, 8, 9.) The card incorporates Chase's Deposit Account Agreement (DAA) and acknowledges the signor's receipt of it:

> By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. … The Depositor acknowledges receipt of the Bank's [DAA] or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, and agree [sic] to be bound by the terms and conditions contained therein as amended from time to time.

2

(DSOF ¶9.) Chase's policy and procedure is to make a copy of the effective DAA available in branches and on its website. (*Id.* ¶10.)

The versions of the DAA that were in effect in July and August 2020 allowed Chase to restrict or close an account for any reason and without notice. The relevant provisions are the following:

- "Either you or we [Chase] may close your account (other than a CD) at any time for any reason or no reason without prior notice. … We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1." (DSOF ¶23.)

- Chase "may decline or prevent any or all transactions to or from your account." (DSOF ¶24.)

- "We [Chase] may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances: …
    - We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
    - We suspect that any transaction may involve illegal activity or may be fraudulent;
    - We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
    - We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
    - We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk ….
    - We will have no liability for any action we take under this section and we may take such action without advance notice." (DSOF ¶25.)

3

- "We will not be liable for indirect, special, or consequential damages regardless of the form of action and even if we have been advised of the possibility of such damages." (DSOF ¶26 (capitalization omitted).)

- "If this agreement conflicts with any statements made by one of our employees or by our affiliates' employees, this agreement will govern." (DSOF ¶27.)

**B.     The opening, freezing, and closing of DriverDo's accounts**

In June 2019, DriverDo opened two Chase Platinum Business Checking accounts, "account #2126" and "account #2159." (DSOF ¶3.) When opening the accounts, Haque and Rizzo signed business signature cards. (DSOF ¶4.)

On or about July 17, 2020, Chase reviewed DriverDo's accounts and decided to close them, while restricting the accounts in advance of their closure. (DSOF ¶¶28–30.) A notification letter regarding the closure was sent to DriverDo. (Dkt. 63-1 at 264, ¶9.) Almost immediately, Rizzo learned that the accounts were restricted. (Dkt. 80-2 ¶12.) DriverDo requested that the funds be released, but Chase advised DriverDo that the accounts were restricted. (Dkt. 80-1 ¶13; Dkt. 80-2 ¶14.) DriverDo could not withdraw funds from, make payments from, or otherwise access the funds in its accounts after July 17, 2020. (Dkt. 80-1 ¶¶27, 38, 40–41.)

On July 18, Haque spoke with a Chase representative who advised that the accounts would be restricted for up to ten days because of an attempted $96,225.00 withdrawal by one of DriverDo's vendors. (Dkt. 80-1 ¶17.) Haque claims that the representative told him that Chase had sent DriverDo several alerts regarding the withdrawal attempt, but Haque maintains that he never received any alerts despite receiving other Automated Clearing House ("ACH") transaction alerts. (Dkt. 80-1 ¶¶18–20.)

On July 20, Chase's relationship manager Hiram Velez emailed Haque a document titled "BUSI_MASS_ABSF_ENG.pdf," in response to a request that Haque had made for the account

4

agreement (dkt. 80-1 ¶¶11, 14), but it was not the DAA.[1] Around this time, DriverDo obtained a $500,000 COVID-19 Economic Injury Disaster Loan (EIDL) from the United States Small Business Association. (Dkt. 80-1 ¶¶28–29.) According to Haque, the EDIL was dispersed to account #2126 on July 27, 2020. (*Id.* ¶29.) Haque claims that Chase representatives confirmed with him that those funds were received, but it was never reflected in any account statement. (*Id.* ¶¶30–34.)[2]

On July 31, Haque inquired with Velez about the complete account agreement and was directed to obtain it from Chase's website. (Dkt. 80-1 ¶15.) DriverDo employee Kevin Burke searched online and retrieved a document titled "Global Account Terms" from jpmorgan.com. (Dkt. 80-1 ¶15; Dkt. 81-3 ¶7.)

DriverDo members used personal funds and obtained a loan to cover business operations while the accounts were frozen. (Dkt. 80-1 ¶42.) DriverDo received cashier's checks from Chase in August 2020 totaling $200,755.78, representing the total amount of funds that were in both accounts. (DSOF ¶33.)

DriverDo brought this action against Chase, raising two claims in its third amended complaint. In count I, DriverDo alleges that Chase violated the EFA Act by failing to make deposits available within the statute's specified time frames, explain why the funds could not be made available, and inform DriverDo when they would be made available. (Dkt. 52 ¶¶69–75.) In count II, DriverDo alleges a breach of contract based on Chase's failure to provide a 30-day

---

[1] DriverDo offers conflicting evidence as to the contents of that pdf file. (*Compare* dkt. 52 at 25; dkt. 80-2 ¶17 *with* (dkt. 80-1 ¶14 (citing exh. B at 16).) Given DriverDo's noncompliance with Local Rule 56.1, the evidence of the content of this agreement is ignored.

[2] The fate of these funds is never explained, and the recovery of them is not specifically tied to any claim.

written notice of its intent to close the accounts and make the funds available as required under an account agreement. (Dkt. 52 ¶¶84–88.)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views all facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the non-movant must do more than raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, he "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). To create a genuine dispute of fact, the evidence must be "such that a reasonable jury could return a verdict for the [non-movant]." *Id.* at 248. The non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

Chase is entitled to summary judgment. On the breach of contract claim, it is undisputed that the DAA governs the parties' relationship and Chase did not breach any provision in that agreement. As for the EFA Act claim, DriverDo has failed to develop an argument on the merits

that is supported with authority and evidence that Chase failed to make specific deposits available for withdrawal within the required time frame, notwithstanding the hold that was placed on the accounts pursuant to the DAA.

I.   **Breach of contract claim**

DriverDo alleges a breach of contract claim based on Chase's failure to provide a 30-day written notice of its intent to close the accounts and its failure make the funds available as required under an account agreement. (Dkt. 52 ¶¶ 84–88.) Chase argues that it is entitled to judgment as a matter of law on this claim because the governing contract — the DAA — contains no such requirements.

Under Illinois Law, a binding contract "between a bank and its depositor is created by signature cards and a deposit agreement." *Kaplan* v. *JPMorgan Chase Bank, N.A.*, No. 14 C 5720, 2015 WL 2358240, at *5 (N.D. Ill. May 12, 2015) (citing *Cont'l Cas. Co.* v. *Am. Nat'l Bank & Tr. Co. of Chi.*, 768 N.E.2d 352, 357 (Ill. App. Ct. 2002)). When a depositor signs signature cards in which they acknowledge receipt of a DAA, that is sufficient to demonstrate the depositor's assent to the DAA. *See Sha-Poppin Gourmet Popcorn LLC* v. *JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021); *see also Perlberger Law Assocs., P.C.* v. *Wells Fargo Bank, N.A.*, No. 21 C 2287, 2022 WL 2819136, at *5 (E.D. Pa. July 19, 2022) ("Courts have routinely held that a party who signs an account application clearly incorporating another document by reference is bound by that document, even if it is not signed."). Indeed, "[a] party who has signed a contract is charged with knowledge of and assent to its terms." *Arbogast* v. *Chi. Cubs Baseball Club, LLC*, — N.E.3d — , 2021 IL App (1st) 210526, ¶21.

Here, it is undisputed that the DAA applies and nothing in it supports DriverDo's alleged breach of a 30-day notice requirement or funds-availability provision. Haque and Rizzo signed signature cards, acknowledging their receipt of and agreement to the DAA. (DSOF ¶9.) There is

7

no 30-day notice requirement or fund-availability provision under the DAA. Accordingly, there is no basis for a breach of contract claim premised on those two alleged provisions.

DriverDo, for its part, argues that there is at least a disputed issue of fact as to which account agreement controls. DriverDo's failure to follow Local Rule 56.1 precludes it from going down this road. But even if it could, the argument has no merit. The signed signature cards plainly and unambiguously incorporate the DAA. And DriverDo cites no authority, nor has the court found any, supporting its suggestion that the failure to hand over a physical copy of the DAA renders it inapplicable or unenforceable. Moreover, the "Global Account Terms" that Burke found on the internet and which DriverDo argues is the actual governing agreement, states that it gives way "to any terms contained in an account application, signature card or similar document," and to the extent there are inconsistent terms in supplemental agreements, those supersede "for purposes of the particular account or Service which is the subject thereof." (Dkt. 52 at 17.)[3] DriverDo's remaining arguments on this point amount to mere attempts to sow metaphysical doubt as to whether the DAA or some other agreement governs.

DriverDo alternatively argues that even if the DAA controls, Chase still breached it by unilaterally restricting and then closing its accounts. But that is what the DAA allows. In no uncertain terms, Chase may restrict an account by "declin[ing] or prevent[ing] any or all transactions to or from [an] account" and close an account "at any time for any reason or no reason without prior notice." Any limitation, condition, or qualification that DriverDo argues exists is belied by the plain language.

---

[3] The link to this document that DriverDo supplied does not direct to the Global Account Terms. Rather, it directs to a webpage that states, "PAGE NOT FOUND … We are sorry. The information you are looking for is no longer available." (*See* dkt. 80-3 at 2.)

DriverDo also suggests that Chase breached an implied-by-law contractual duty to exercise ordinary care when restricting its account for almost 30 days before closing it. But DriverDo fails to develop a cogent theory or factual basis for this claim. The cases that DriverDo cites for the existence of such a claim involve situations where a bank disbursed funds that came from a check that was made payable to the bank for the purpose of withdrawing cash or depositing money into another account, essentially allowing embezzlement. *See Mut. Serv. Cas. Ins. Co.* v. *Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001); *Cont'l Cas. Co.* v. *Am. Nat'l Bank & Trust Co. of Chi.*, 768 N.E.2d 352 (Ill. App. Ct. 2002). Those cases do not describe anything like the factual situation here. Nor does DriverDo explain how Chase's conduct otherwise fell below an ordinary standard of care in restricting and closing the accounts. *See Wilmette Partners* v. *Hamel*, 594 N.E.2d 1177, 1184 (Ill. App. Ct. 1992) (if "contract does not specify the time for performance, the law implies a reasonable time" and "what constitutes a reasonable time" is "such time as is necessary to do conveniently what the contract requires").

Chase is entitled to summary judgment on the breach of contract claim because it is undisputed that the DAA governs and there was no breach. The freezing and closure of accounts was undoubtedly frustrating and customer service was lacking, but that does not add up to a breach of contract claim.

**II.      EFA Act claim**

DriverDo alleges that Chase failed to make electronically deposited funds in its accounts, between July 15–22, 2020, available for withdrawal and failed to provide DriverDo with an explanation as to when those deposits would be made available or why they were unavailable, in violation of the EFA Act and its implementing regulation, Regulation CC. This claim previously survived dismissal because one of Chase's bases for dismissal improperly relied on evidence that contradicted the pleadings, and the other basis for dismissal was its erroneous belief that the EFA

Act and Regulation CC did not apply to electronically deposited funds. Chase now moves for summary judgment on the basis that the EFA Act and Regulation CC expressly allow banks to have policies that limit access to funds.

The EFA Act regulates the time a bank may take in making deposited funds available to its account holders. It was designed to standardize and improve the lagging check-clearing process between banks that caused lengthy holds to be placed on deposited funds, impeding bank customers' expeditious use of their checking accounts. *See Bank One Chi., N.A.* v. *Midwest Bank & Trust Co.*, 516 U.S. 264, 266–67 (1996). To that end, the EFA Act and Regulation CC require that electronically deposited funds be available for withdrawal not later than one business day after deposit. *See* 12 U.S.C. § 4002(a)(1)(B); 12 C.F.R. § 229.10(b)(1). Thus, to show an EFA Act violation, DriverDo is required to come forward with some evidence that it had made a specific type of deposit that is covered by the EFA Act and that Chase held that deposit beyond the specific timeframe allowed. *See Little Donkey Enters. Wash., Inc.* v. *U.S. Bancorp*, 136 F. App'x 91, 92 (9th Cir. 2005). "[M]erely placing a hold on or freezing funds in an account after the deposits have been made available is not a violation of the [EFA Act]." *Id.*

Chase argues that the claim fails as a matter of law because § 229.19(c)(4) of Regulation CC "expressly permits banks like Chase to restrict access to any or all funds in customers' accounts at any time, so long as the policy permitting such restrictions is not based on how long the funds have been on deposit." But this regulation involves daily withdrawal limits: Regulation CC does not "[s]upersede any policy of a depositary bank that limits the amount of cash a customer may withdraw from its account on any one day, if that policy … [i]s not dependent on the time the funds have been deposited in the account[.]" 12 C.F.R. § 229.19(c)(4). The commentary explains that it "addresses the relation between a bank's cash withdrawal limit (for

over-the-counter cash withdrawals as well as ATM cash withdrawals) and the requirements of this subpart." 12 C.F.R. § Pt. 229, App. E. Here, no allegation or evidence suggests that DriverDo was denied a cash withdrawal because it hit the daily limit; rather, it was unable to withdraw or transfer any funds whatsoever due to a freeze on the account. This regulation is therefore inapplicable.

Nevertheless, summary judgment is the "put up or shut up" moment in the case, *Schacht v. Wis. Dep't of Corrs.*, 175 F.3d 497, 504 (7th Cir. 1999), and DriverDo still needs to show that it has sufficient evidence for a reasonable jury to conclude that Chase violated the EFA Act. It has not done so. DriverDo provides no argument with supporting authority that explains how new deposits that go into a frozen account, which is frozen pursuant to a DAA, constitute a violation of the EFA Act. Assuming such deposits could be EFA Act violations, DriverDo still has not identified or properly presented evidence of the specific deposits that were not made available. DriverDo's only support of its claim is contained in two sentences that merely point back to the alleged theory in its pleading and the partially redacted bank statements attached to it. (*See* dkt. 80 at 14.) Thus, DriverDo cannot avoid summary judgment.

## CONCLUSION AND ORDER

Chase's motion for summary judgment (dkt. 61) is granted. The Clerk is directed to enter judgment for defendant. Case terminated.

Date: August 24, 2022

_____
U.S. District Judge Joan H. Lefkow